505 P.2d 865

Paul MABREY, Plaintiff-Appellee,

v.

MOBIL OIL CORPORATION, Defendant and Third-Party Plaintiff-Appellant,

v.

D. E. SPARGER, d/b/a Jet Construction Company, Third-Party Defendant-Appellee.

No. 838.

Court of Appeals of New Mexico.

Nov. 3, 1972.

Certiorari Denied Dec. 11, 1972.

William J. Heck, Hobbs, for appellee Paul Mabrey.

Mack Easley, Easley & Reynolds, Hobbs, for appellant Mobil Oil Corp.

Sam Laughlin, Jr., Roswell, R. E. Richards, Girand & Richards, Hobbs, for third-party defendant D. E. Sparger.

## OPINION

HENDLEY, Judge.

Mabrey, while employed by D. E. Sparger, d/b/a Jet Construction Company, sued Mobil for negligence. Mobil filed a third-party complaint against Sparger. Sparger was ultimately dismissed from any liability. Mabrey v. Mobil Oil Corporation, 84 N.M. 272, 502 P.2d 297, (Ct.App.), decided March 31, 1972. The jury found in favor of Mabrey and judgment was entered.

We affirm.

Mobil appeals contending that: (1) the trial court should have directed a verdict in its favor since Mobil owed no duty to warn Mabrey or protect him from a danger inherent in the work, which danger was fully known to Sparger, and (2) the jury verdict was not supported by substantial evidence.

Mobil had a contract with Sparger, a general oilfield maintenance company. Mobil's contract specified that Sparger was ". . . an independent contractor free of control or supervision by Company [Mobil] as to the means or manner of performing such work. Company has contracted herein solely for the results of such work. Contractor [Sparger] shall perform the work and service with due diligence and in good and workmanlike manner. . . ." The contract, with regard to payment provided: "If performance of any payment under this contract is on any basis (other than a turnkey basis), . . . then Company, . . . shall have the right to audit the books, records, and invoices, of Contractor involved in the performance of such contract, . . . ."

On the day before the accident in question, Mobil's production foreman called Sparger to change a fire-tube in a heater-treater belonging to Mobil. Sparger sent a crew to make the change. The man in charge of the crew had changed twenty-nine fire-tubes for Mobil prior to the accident. In the process of inserting a new

fire-tube an explosion and fire occurred injuring Mabrey, an employee of Sparger.

Mabrey had been employed by Sparger as a roustabout and did such work as "cleaning up tank batteries" and "cleaning out heater treaters." He had worked ten years in the oil fields, the big part of which was pulling rod, tubing and casing. Mabrey testified that: "Although, I have pulled quite a few heater treaters. I never knew the danger of this heater treater." As to the gas odor just prior to the explosion, he testified: "You can smell so much gas around a battery. On this particular battery, I didn't smell no more than usual, no more gas than usual." With regard to any warning, he stated that Mobil's supervisor never indicated to him that he was in a dangerous situation. He also testified that the gang pusher for Sparger told him the heater-treater had ventilated for two and one-half hours and was safe.

Mabrey's immediate supervisor, Scott, the gang pusher, testified that after getting a call to change the fire-tube and clean the heater, they (he and his crew) went to the battery and found that the heater-treater had not been emptied. Upon being notified of this fact, Mobil sent a vacuum truck to empty the heater-treater. Scott testified that all lines to the heater-treater had been disconnected.

No previous accident such as this had been experienced by either Mobil or Sparger and they knew of none in the area. The specific cause of the explosion and fire was not determined.

An expert witness for Mabrey testified that it was not a safe practice to work on the heater-treater unless it had been purged (degassed) either by forced air or steam and that the responsibility of degassing belonged to Mobil.

The basis for defendant's liability appears in an instruction to which no objection was made and, therefore, is the law of this case. It reads: "The defendant owed the plaintiff the duty to exercise ordi-

nary care to keep the property reasonably safe for use by the plaintiff."

This duty was limited by an instruction which reads:

"The defendant did not owe the plaintiff the duty to warn the plaintiff of or protect him from dangers inherent in the work that defendant hired plaintiff's employer to do if plaintiff's employer knew or should have known of the dangers."

Mobil contends that the trial court should have directed a verdict against plaintiff since Mobil owed no duty to warn him or protect him for a danger inherent in the work, which danger was fully known to Jet [Sparger].

Mobil relies on Parsons v. Amerada Hess Corporation, 422 F.2d 610 (10th Cir. 1970) for the proposition that the owner of premises has no liability for physical harm to an employee of an independent contractor caused by a known danger encountered by the employee while engaged in the performance of work inherently dangerous. However, *Parsons* is distinguishable on its facts. Here, Mabrey testified that he was unaware of any danger. The odor of gas was normal to an oilfield and not in any unusual amounts. In *Parsons*, the cleaning of a tank car with escaping poisonous gas was a known danger.

 In considering a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the party resisting the motion, indulging every reasonable inference in support of the party resisting, ignoring conflicts in evidence unfavorable to him, and if reasonable minds might differ as to the conclusion to be reached, under the evidence or permissible inferences, the question is for the jury. Brown v. Hall, 80 N.M. 556, 458 P.2d 808 (Ct.App.1969).

There was conflicting testimony regarding the danger of an explosion in the changing of a fire-tube. Mabrey stated that "[n]o one told [him] there was any danger at all" and he also stated that the pusher told him the heater-treater was safe. Plain-

tiff's employer did not testify. Sparger's gang pusher gave no testimony as to any danger, much less an inherent danger. There was other testimony that the changing of the tube was inherently dangerous.

This conflicting testimony created a question to be resolved by the jury as to the employer's knowledge of danger. Thus, a directed verdict would have been improper under Brown v. Hall, supra.

Lastly, defendant contends there was no substantial evidence to support the verdict. We have reviewed the record and find there was substantial evidence to support the verdict.

Affirmed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.