**Mike MADRID, Administrator of the Estate of Ted McDonald, Deceased, Plaintiff-Appellant,**

v.

**MINE SAFETY APPLIANCE COMPANY, a corporation, and Texaco, Inc., a corporation, Defendants-Appellees.**

No. 73–1202.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 13, 1973.

Decided Oct. 25, 1973.

Benjamin S. Eastburn, Farmington, N. M., for plaintiff-appellant.

John P. Cusack, Roswell, N. M., for defendant-appellee Mine Safety Appliance Co.

White & Caton, Farmington, N. M., for defendant-appellee Texaco, Inc.

Before BREITENSTEIN, Senior Circuit Judge, DOYLE, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The appeal before us relates to the tort liability of the Mine Safety Appli-

* Hon. Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

ance Company (hereafter Mine Safety) and Texaco, Inc., arising out of the death of appellant's decedent, Ted McDonald. Mr. McDonald was, at the time of his death, an employee of the National Tank Company. The case was tried to the Court, without a jury, following which the Court entered exhaustive findings of fact and conclusions of law in favor of the defendants.

Mr. McDonald and his immediate superior, Walter Rector, were sent by National Tank to install flanges on tanks owned by Texaco and located in an oil field on the Navajo reservation in southeastern Utah. They first worked on Tank 17. After completing work on this tank they moved on to Tank 15. Late in the evening the decedent's body with a gas mask in place was found at the base of the ladder in the tank, with Rector's body on top. With respect both to Mine Safety and Texaco certain theories are asserted under which appellant seeks to establish liability in damages arising out of the death. These will be discussed in detail as the points made are considered.

The mask worn by the decedent bore the following warning: "This canister protects only against hydrogen sulfide gas, petroleum vapors and dust mist and fogs that are not significantly more toxic than lead. This canister must not be used where the oxygen content is less than 16%." Appellant argues that the cause of death was not a lack of oxygen, warned against, but was due to petroleum vapors. He points to the position of the bodies and excerpts from the testimony of Dr. Schoenfeld, a toxicologist (not a medical doctor) and theorizes therefrom that death was due to petroleum vapors, and that had it been due to lack of oxygen "he would have had sufficient time to descend the ladder and at least start in the direction of the four inch hole." Appellee Mine Safety speculates that the same physical facts are consistent with a lack of oxygen. Dr.

Schoenfeld testified that he tested Tank Battery No. 16 almost a year later and found that it was saturated with petroleum vapor in an amount from between fifty-eight percent and ninety-five percent, which is sufficient, he said, to cause death either from lack of oxygen or fumes.

There is no medical testimony as to the cause of death. No autopsy was done. No physical facts are conclusive. The trial court found that "The medical cause of decedent's death is not established," a conclusion seeming to us inescapable upon the record made. It is hardly necessary to stress, though the observation should be made since we are called upon in this entire case to review numerous findings of fact made by the trier of the facts, that under New Mexico law, as generally, "the facts are to be viewed in the aspect most favorable to the prevailing party" and the appellate court is to "indulge all reasonable inferences in support of the verdicts, disregarding all inferences or evidence to the contrary. It is for the jury, not us, '[to] weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies.' "[1]

We have noted that the decedent was found at the foot of the ladder in the tank wearing a mask. The appellant argues that the mask was improperly labelled in that its warnings were "physically insignificant," that its terms were not readily understandable to the average user, and that they failed to advise of the peril if improperly used.

The appellant relies principally upon the case of Spruill v. Boyle-Midway, Incorp., 308 F.2d 79 (4th Cir. 1962) for the proposition that a supplier or manufacturer must "be expected to anticipate the environment which is normal for the use of his product," arguing therefrom that since a "hot" tank[2] contains gases,

1. Durrett v. Petritsis, 82 N.M. 1, 474 P.2d 487 (1970).

2. A "hot" tank is a storage tank in which crude oil has been stored. Findings of Fact, # 15.

and the product before us is a gas mask, therefore the appellant's decedent was justified in assuming that the gas mask in evidence was intended for use in the environment under consideration and the label (if, indeed, he read it and understood it) did not warn him to the contrary.

Appellee Mine Safety challenges the syllogism thus argued in many particulars but the principle difficulty, indeed, the insurmountable obstacle against its acceptance by this court, lies with the facts found below. First, as to the physical situation presented, the appellant's decedent was not a stranger to the oil fields. He had previously worked around such fields, crude oil storage tanks, and oil field equipment for two summers and had been a full time employee since the October preceding his death. He knew, or should have known, of the danger, that is, not to enter a "hot" tank when the basic sediment or clean-out plate was still in place without first removing a stave and letting the tank air out. He had been instructed on the proper procedure for installing flanges both on March 4 and March 5 [3] and had, with his supervisor, successfully installed a flange on Tank 17, by following the proper procedure, on the same morning before working on Tank 15. When he entered Tank 15 from the vent hatch located at the top of the tank he did so in violation of instructions by the National Tank Company.

The mask he wore was not suitable for use under the conditions in which he attempted to use it but it was not furnished to him for such purpose. There was testimony that "it was just a paint mask . . . . We done a lot of spray painting." The instructions given him for the accomplishment of his assigned work did not include the use of the mask, since the mask was sold to his employer and used by it for purposes other than entry into "hot" tanks. There was no testimony that the mask had malfunctioned or failed to function in any way. It was simply not the type of mask to use for such purpose.

It is at this point that the appellant seeks to use the warning doctrine, asserting that the label on the mask was inadequate, that it did not give proper warning that "this was not the proper mask for the conditions he encountered." What these "conditions" (meaning, apparently, the kinds and concentrations of gases) were, the record does not disclose. But, whatever they were, it was the finding of the trial court that the decedent knew of the danger presented, and that it was not hidden or obscure. There is testimony in the record that in a "hot" tank, without removal of the bottom sediment plate, there is a lack of oxygen in the tank, and it was found as a fact that "decedent knew or should have known not to enter a 'hot' tank when the basic sediment or clean-out plate was still in place without first removing a stave and letting the tank air out . . . ." The oxygen problem was specifically adverted to on the canister's label, it stating that "This canister must not be used where the oxygen content is less than 16%." In view of the findings herein summarized the trial

3. Appellant argues that the instructions given decedent by National Tank on the proper procedures to be followed were admitted "in violation of the New Mexico Deadman's Statute," found in N.M.S.A. 20-2-5 (1953 Comp.). Our ruling is restricted to the issue thus raised. The argument is that the National Tank Company, decedent's employer, which was not a party to the action, was an interested party. This Company, it is argued, shared the same insurance carrier with defendant Texaco and had an economic interest in the litigation arising out of its employment relationship with Texaco. The trial judge rejected the objections made and admitted the testimony. We agree without passing on the issue of interest, since in any event, corroboration was had of the challenged testimony. The New Mexico Act permits testimony otherwise excluded if "such evidence is supported by some other material evidence tending to corroborate the claimant or interested person." See Hansen, 1 Nat. Res.J. 189 (1961) of the University of New Mexico School of Law.

court held that "The lable on the canister gave no indication that the mask could be used safely under the conditions which existed and which decedent knew, or by reasonable inquiry should have known existed in Tank 15." We agree. In the dangerous situation presented, known to the employee, reliance may not properly be placed on a mask without some reasonable indication thereon of safety to be attained from its use. Such holding precludes not only liability for negligent failure to warn, but also the application of the doctrine of strict liability (if otherwise applicable) based upon the theory that inadequate warning constituted a defective condition of the product. Neither the diligence of counsel nor our own research has disclosed a case precisely in point on these facts, although the Restatement of the Law, Torts, § 388 and commentaries thereon, and the case of McLaughlin v.

Mine Safety Appliances Co., 11 N.Y.2d 62, 226 N.Y.S.2d 407, 181 N.E.2d 430 (1962) and cases therein cited, contain helpful discussions. See, also Dillard and Hart, Product Liability: Directions for Use and Duty to Warn, 41 Va.L.Rev. 145 (1955).

■ Appellant next argues that the deceased was "not the employee of an 'independent contractor' in the legal sense of the term," that (citing 31 A.L. R.2d 1375) "the weight of authority is to the effect that, as a general proposition he [the owner or occupier of premises] is bound in law to use reasonable care to provide and maintain a safe place in which an independent contractor and his employees can work," and, that "within the perimeters of § 343 and § 414 [of the Restatement of the Law, Torts], that the judgment of the court below should be reversed upon the facts of this record." [4]

4. The cited sections state:

§ 414. Negligence in Exercising Control Retained by Employer.

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

The above Section, § 414, is "a member of the same family of sections of the Restatement as Sections 413, 416 and 427," Parsons v. Amerada Hess Corp., 422 F.2d 610 (10th Cir. 1970), which sections state as follows:

§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

§ 416. Work Dangerous in Absence of Special Precautions.

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

§ 427. Negligence as to Danger Inherent in the Work.

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such workers by the contractor's failure to take reasonable precautions against such danger.

§ 343. Dangerous Conditions Known to or Discoverable by Possessor.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

As abstract principles of law the points made (e. g., an employer's duty to furnish a safe place to work) are generally acceptable today, regardless of the situation only a few decades ago. The appellant's difficulty, however, lies not with the law but with the facts found in the case before us. Thus the trial court found that National Tank Company, decedent's employer, "was an independent contractor under an agreement with Texaco, Inc. to install flanges on Texaco's crude oil storage tanks . . . ."[5] Disputing such finding the appellant excerpts certain of the testimony going to control, and the right to control, Texaco citing other portions thereof. We find no error in the court's holding on this point regarding it, in fact, well justified on the record made.

But appellant argues further that, even with independent contractorship established, nevertheless it was incumbent upon Texaco to furnish the decedent a safe place to work. The problem here has caused a wide divergence of opinion in the courts. It is the holding of many courts (see footnote 1, Parsons v. Amerada Hess Corp., *supra*) that employees of an independent contractor are included within the protected class of third persons when the performance of the contracted work is (as here) inherently dangerous. But other courts have held that employees of the independent contractor are not within the protected class. We examined the matter in detail in the *Parsons* case, *supra*, and, after an examination of the New Mexico authorities, held as follows:

> Until, therefore, New Mexico has spoken more explicitly to our subject, we

must conclude that an employee of an independent contractor is not within the class of third persons to whom the employer of the independent contractor owes the nondelegable duty of due care while such employee is engaged in the performance of inherently dangerous contracted work. 422 F.2d at 614.

The New Mexico court not having, to date, spoken more explicitly on the subject, our conclusion remains as stated in *Parsons*.

In the same case, *Parsons*, the applicability of §§ 343 and 343A[6] liability was exhaustively examined in the light of the New Mexico precedents. We there stated that Section 343 was "intended to impose a duty on the owner of the land to appreciate and warn of a dangerous and latent condition on the premises." But, as the Section states, liability turns, *inter alia*, on the consideration that an invitee "will not discover or realize the danger," and, under Section 343A, there is no liability if the danger is "known or obvious." Here we have no unknown danger. The record discloses warnings to the decedent by Mr. Begshaw of National Tank, by Mr. Muns, his former crew foreman, and by Mr. Fowler, the branch manager. Although appellant attacks this testimony, its credibility and weight were for the trier of the facts.

Appellant, however, relies heavily upon Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1971) as having changed the "policy for New Mexico in this area of the law." We do not so read *Williamson*. The case dealt with the doctrine of assumption of risk, holding that "as-

---

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

§ 343A. *Known or Obvious Dangers.*

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated. 422 F.2d at 612–614.

5. Findings of Fact, # 4. Finding of Fact # 11 stated, in part, that National Tank had instructed decedent on the proper procedure for installing flanges.

6. See footnote 4, supra.

sumption of risk will no longer be a defense in New Mexico." We find therein no discussion of the problem here under consideration, or, indeed, mention of the *Parsons* case. The more recent case of Mabrey v. Mobile Oil Corp., 84 N.M. 522, 505 P.2d 865 (Ct.App.1972) indicates no change in the *Parsons* doctrine. There the questions presented related to the liability of the defendant employer of an independent contractor for injury to plaintiff, one of the contractor's employees, where the contractor denied knowledge of the danger, and where the question of knowledge had been left to the jury. No criticism was made by the Court of Appeals (cert. denied Dec. 11, 1972) of the following instruction:

> "The defendant did not owe the plaintiff the duty to warn the plaintiff of or protect him from dangers inherent in the work that defendant hired plaintiff's employer to do, if plaintiff's employer knew or should have known of the dangers."

The conclusions of the *Parsons* court as to liability under Section 343 is equally applicable here, namely, that "Again until New Mexico speaks on the subject, we agree with the trial court that liability cannot be imposed under Section 343 in situations like this."

■ In summary, on this entire phase of the case, there is no doubt that the work being done was inherently dangerous, a fact known both to the appellant's decedent and to his employer. The employee, with this knowledge, entered the tank in violation of his employer's instructions. The trial court found that he was contributorily negligent. Although the appellant challenges the finding in the briefs filed with us, on the ground, among others, that appellant's decedent ran into unexpected difficulties in his work at Tank 15, nevertheless the trial court, weighing the evidence and appraising the witnesses, found contributory negligence, and, as we have noted, knowledge of the danger confronted on his part as well as that of his employer. We cannot say there was error therein. Under these circumstances and the applicable New Mexico law, cited hereinabove, the doctrines relied upon by the appellant, imposing liability upon the principal contractor, have no application.

■ Finally, appellant urges to us that under the regulations of the U.S. Geological Survey, 30 C.F.R. § 221.37, as implemented by the safety orders of the Utah Industrial Commission, Texaco was in violation of such safety orders, such constituting negligence *per se*,[7] as well as of its own safety regulations, alleged violations of which constituted evidence of its negligence. Assuming that the safety orders issued by the Industrial Commission of the State of Utah are applicable,[8] and applicable, as well, to alleged Federal oil leases on Indian lands, issues upon which our view of the case does not require us to rule, it nevertheless remains that the trier of the facts held that Texaco was "not negligent as to decedent in any manner which proximately caused his death."[9] Such a holding does not, of course, exclude the possibility that the trial court may have believed Texaco negligent in some respect or respects. But, as found, the primary responsibility for an employee's safety under the circumstances before us rested with his employer, the independent contractor, National Tank. It had the duty to determine how the flange should be installed in the tank, and, in event entry therein was necessary, to properly prepare the tank for entry.[10] Texaco, it was found, had the right to rely on the fact that National Tank had been installing flanges for years and that it

7. See Bowman v. Redding & Co., 145 U.S. App.D.C. 294, 449 F.2d 956 (1971).

8. *cf.* Conclusions of Law, # 2, "The law of the State of New Mexico governs this case."

9. Conclusions of Law, # 3.

10. Findings of Fact, # 23.

would properly proceed with the installation in a safe and prudent manner.[11]

In addition it is significant that this is not a case of hidden or concealed dangers. The appellant's decedent was, as we have noted heretofore, warned of the dangers he confronted [12] yet, tragically as it turned out, disregarded the danger and entered the tank. Such action on his part was not only the proximate cause of his death but, with particular relevance to the asserted negligence of Texaco, constituted, as found by the trial court, contributory negligence on his part. We find no error in the case.

Affirmed.

11.  Findings of Fact, #21.

12.  Testimony of Begshaw, Muns and Fowler, supra.