192 N.J. Super. 251 (1983)
469 A.2d 943
ARMANDO CAMPOS AND PURESA CAMPOS, PLAINTIFFS-RESPONDENTS,
v.
THE FIRESTONE TIRE & RUBBER COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1983.
Decided December 1, 1983.
*253 Before Judges MICHELS, KING and DREIER.
Erwin N. Griswold, pro hac vice, of the District of Columbia, Ohio and Massachusetts Bar, argued the cause for appellant (Ribis, McCluskey, Ruane & Graham, attorneys; Jerome J. Graham, Jr. of counsel; Victor E. Schwartz, Patrick W. Lee, Kathryn Kelly, Elizabeth L. West and George C. Jones on the brief).
William H. Sheil argued the cause for respondents.
Buttermore, Mullen, Jeremiah and Phillips, filed a brief amicus curiae for Washington Legal Foundation (Daniel J. Popeo of counsel; William S. Jeremiah and Nicholas E. Calio of the District of Columbia Bar on the brief).
Young, Rose, & Millspaugh, filed a brief amicus curiae for National Machine Tool Builders' Association (Frederick W. Rose on the brief; Mark J. Nuzzaco of the Oregon Bar of counsel).
Connell, Foley & Geiser, filed a brief amicus curiae for Armstrong Rubber Company, Cooper Tire & Rubber Company, Dunlop Tire & Rubber Corporation, General Tire & Rubber Company, The Goodyear Tire & Rubber Company and Uniroyal Tire Company (John B. Lavecchia of counsel and on the brief).
Kronisch & Schkeeper, filed a brief amicus curiae for Association of Trial Lawyers of America, New Jersey Affiliate (Allan Roth of Bendit, Weinstock & Sharbaugh, on the brief).
The opinion of the court was delivered by MICHAEL P. KING, J.A.D.
In this products-defect failure-to-warn case plaintiff Armando Campos was awarded a verdict of $255,000 for injuries to his right arm. The product allegedly causing the injury was a three-piece wheel-rim assembly manufactured by defendant Firestone and sold to plaintiff's employer. In response to two special questions the jury found no design defect but did find that defendant failed to adequately warn of the product's potential danger. Post-trial motions for judgment were denied and *254 Firestone appeals. The key issue on this appeal is whether Firestone violated any legal duty to this plaintiff to warn of the product's danger. We conclude that it did not and that judgment should have been entered for Firestone.
Plaintiff was injured on November 1, 1978 while working as a tire mechanic for Theurer-Atlantic, Inc. in Newark. He was inflating a Dunlop truck tire on a Firestone rim assembly. Just before the accident he had assembled a tire on a standard three-piece truck rim. After placing the tire and rim assembly into a steel safety cage, he was in the process of inflating the tire within the steel safety cage.
The purpose of the steel safety cage, as conceded by plaintiff's own expert, was to prevent the metal rim components from striking anyone in the event the rim components separated under pressure during inflation. Separation under pressure could occur if the rim parts were defective or were not properly assembled by the mechanic. In addition to the steel safety cage, plaintiff used a clip-on air chuck. The purpose of this clip-on chuck was to permit the tire mechanic to stand away from the steel safety cage during inflation, another safety precaution against injury from rim separation.
Plaintiff was an experienced tire mechanic. He had changed eight truck tires an hour, eight to ten hours a day, six days a week for over seven years. He knew the procedures for safety during inflation: assembly in the steel safety cage, use of the clip-on chuck and standing away from the cage.
While inflating the tire, plaintiff saw the lock-ring component of the rim assembly separating, that is, "coming out." He reached inside the safety cage and his right hand and arm were seriously injured when struck by the lock-ring. Plaintiff admitted that he knew such conduct was dangerous and that separation under pressure could cause serious injury. Moreover, six years before, plaintiff had caused the same type of accident and had been injured at work when he had reached inside a safety cage during inflation of a tire and rim assembly. Plaintiff *255 admitted that after the first accident he had been reinstructed in the use of the safety cage and the clip-on air chuck and had been told specifically by his superior to "stand back" while inflating a tire.
Both plaintiff's expert, Brenner, and Firestone's expert, Lee, testified that these standard safety devices  the steel cage and clip-on chuck  were adequate and would prevent injury during a separation of rim components under pressure. Firestone specifically recommended use of the cage and chuck in product catalogues distributed to its customers. Plaintiff's employer had been periodically provided with these catalogues before the accident. In addition, Firestone provided plaintiff's employer with a wall chart printed by the Department of Transportation describing these safety procedures for assembling and inflating multi-piece rims.
There was no written or pictorial warning about the danger of reaching into the cage on either the tire rims or on the safety cage. The safety cage was not designed, manufactured, nor sold by Firestone. Because plaintiff was illiterate in both English and his native Portuguese, any printed warning would have been ineffective. Plaintiff's safety expert, Brenner, theorized that some type of international graphic symbol could have been used by Firestone to portray the danger of putting one's arm in the safety cage when separation was imminent. He, however, admitted the doubtful efficacy of such a picture or symbol in the circumstance of this case.
He said:
Q. [by defense counsel] Take a stop sign, I guess it's hexagonal, eight-sided, and it says, "Stop" on it 
A. And it's red.
Q. And it's red.
A. That's correct.
Q. Is that the kind of signal we're talking about?
A. That is a form of symbol. The "Do Not Smoke" sign, which has a cigarette and a red line across it is another type of symbol.

*256 Q. Now, how would those kinds of symbols have helped Mr. Campos in the situation he was in where he's observing a forcible separation of a truck rim in a cage airing the tire?
A. Not very much. A little perhaps. That is, if there was a reminder in graphical form against putting his hands in telling him that explosive separations can take place, and he's instructed verbally by somebody in his own native tongue as to what that symbol means. Then at least that amount of information has been provided to him.
I don't think it's going to be very effective beyond a certain point because this particular incident situationally starts before the tire even gets into the cage. It starts either on the assembly line or it starts when the man is assembling it and doesn't assemble it correctly. I certainly agree that the warning graphical which the man, let's say, understands, is not  it's better than nothing, but not very much better.
Q. Is it better than the pain caused by a prior injury in terms of suppressing his instincts for putting his hands in the cage?
A. No.
Brenner, a mechanical and safety engineer, considered plaintiff's conduct characteristic of industrial accidents that occur where a worker instinctively reacts to an imminent mishap and ignores obvious danger.
Freund v. Cellofilm Property, Inc., 87 N.J. 229 (1981), is the seminal case in this jurisdiction treating the failure to warn and its relationship to strict liability. The Court concluded "generally that in inadequate warning design defect cases, a strict liability charge should be given." Id. at 241. Such charge must make clear that "the warning must be sufficient to protect any and all foreseeable users from hidden dangers presented by the product." Id. at 243.
Freund was followed by Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386 (1982). The Court there held that an independent contractor who rebuilds part of a machine given him by the plaintiff's employer may be held strictly liable for injuries sustained by a foreseeable user resulting from a failure to warn of dangerous propensities. In Michalko the Court expressly reserved the apparent question presented to us, i.e., whether adequate warnings to the purchaser of an industrial product, which will foreseeably be used by trained and experienced industrial workers, will provide a legal or factual defense to the *257 manufacturer in a strict-liability failure-to-warn case. Id. at 403, n. 5. In Michalko the general duty was restated:
Hence, a manufacturer is under a duty to warn owners and foreseeable users of the dangers of using a particular machine if, without such a warning, the machine is not reasonably safe. A manufacturer which does not caution against the dangers inherent in the use of its product should be held strictly liable for injuries resulting from the absence of such warnings. [at 403]
Our courts have generally established a manufacturer's duty "to warn of concealed dangers" which might result in "foreseeable injury." Martin v. Bengue, Inc., 25 N.J. 359, 366-367 (1957) (duty to warn consumer of flammability of Ben-Gay vapors); Torsiello v. Whitehall Laboratories, 165 N.J. Super. 311, 320 (App.Div.), certif. den. 81 N.J. 50 (1979) (duty to warn consuming public of risks of prolonged use of over-the-counter drug, aspirin). See 2 Restatement, Torts 2d, § 388(b) at 301 and § 402A, Comment (j) at 353 (1965). Our cases to date have not explicitly considered the duty to warn in the context presented in the case before us, i.e., a skilled industrial worker who proceeds in disregard of obvious safety procedures to confront a known hazard. We conclude that where the hazard is obvious and avoidable, written or symbolic warnings as suggested here become much less relevant and ineffective, especially where the warning will convey the same or less potential for restraint than the user's own experience where that experience is foreseeable from the manufacturer's vantage.
Our warning cases to date suggest the duty is not absolute or totally co-extensive with all risks. In Lewis v. Zapolitz, 72 N.J. Super. 168 (App.Div.), certif. den. 37 N.J. 226 (1962), this court found no duty to warn of the potential hazards of a plastic slingshot saying "danger was or should have been as apparent to the buyer as the vendor. It would be difficult indeed to conceive of a 12-year-old boy who was unacquainted with the use of so common an article. Under such circumstances there would ordinarily be no duty to provide a warning." Id. at 178. A very recent decision of this court treats the duty to warn in a products context where the hazard is open, obvious and common *258 knowledge. In Height v. Kawasaki Heavy Indus., Ltd., 190 N.J. Super. 7 (App.Div. 1983), plaintiff was operating a motorcycle made and sold by defendant when he crossed the center line of a roadway and collided head-on at a speed of 40 miles per hour with an oncoming vehicle. Vaporized or liquid gasoline from the cycle's damaged fuel tank sprayed on him and caused burns. The jury, as in the case before us, found no design defect or manufacturing defect in the propulsion system and found the product reasonably suitable for anticipated use. In seeking a reversal from the adverse verdict plaintiff made this claim.
On appeal, as we have noted, plaintiff does not challenge the jury determination that there was no design defect in the fuel system or fuel tank. Rather, he contends that he was entitled to a jury instruction that defendants might be found liable for breach of a duty to provide a warning of the hazard of ignition of gasoline spraying onto the clothing of the motorcycle operator in the event of a collision. Plaintiff does not specify a proximate cause relationship between the lack of a warning and the burns suffered by him. Nor was any such relationship established in our view. The trial record is barren of any evidence that a warning would have made the fuel system safer or enabled plaintiff to do anything to prevent his burns other than to avoid a high-speed crash, a mishap involving grave danger of which he had knowledge without a warning. [Id. at 9-10]
In rejecting this contention this court ruled:
Judicial authorities relied on by plaintiff thus are inapposite. All of them recognize liability of the manufacturer or distributor of a product for failure to provide a warning only if the warning would have enabled the user of the product to make it reasonably safe in ordinary use or otherwise to protect himself. Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386 (1982); Beshada v. Johns-Manville Products Corp., 90 N.J. 191 (1982); Freund v. Cellofilm Properties, Inc., 87 N.J. 229 (1981); Martinez v. Atlas Bolt & Screw Co., 636 P.2d 1287 (Colo. App. 1981); see also Torsiello v. Whitehall Laboratories, 165 N.J. Super. 311 (App.Div. 1979), certif. den. 81 N.J. 50 (1979).
Under the developing law in this field, failure to provide an adequate warning may amount to a design defect subjecting the manufacturer or distributor of a product to strict tort liability. But the manufacturer or distributor has been exempted from strict tort liability for failure to provide a warning of a danger within common knowledge and understanding, 2 Restatement, Torts 2d, § 402A, Comment (j) at 353 (1965); 2 Hursh and Bailey, American Law of Products Liability, 92 ed. 1974, § 8.14 and 8.15. For example, strict liability has been rejected for failure of a manufacturer to provide a warning that a motor vehicle may skid on a slippery road surface in low gear or upon braking. Zidek v. *259 General Motor Corp., 66 Ill. App.3d 982, 23 Ill.Dec. 715, 384 N.E.2d 509 (Ill. App. 1978). [Id. at 10]
The general rule in this area is stated by Prosser:
One limitation commonly placed upon the duty to warn, or for that matter the seller's entire liability, is that he is not liable for dangers that are known to the user, or are obvious to him, or are so commonly known that it can reasonably be assumed that the user will be familiar with them. Thus there is certainly no usual duty to warn the purchaser that a knife or an axe will cut, a match will take fire, dynamite will explode, or a hammer may mash a finger. [Prosser, Law of Torts, § 96 at 649 (4 ed. 1971)].
This principle applies in either negligence or strict liability contexts. Id. at 659, n. 73. See also 63 Am.Jur.2d, Products Liability, § 52 at 60.
Other authorities holding that there is no duty to warn where the danger is obvious and the user knowledgeable include, e.g. Strong v. E.I. Dupont De Nemours, Inc., 667 F.2d 682 (8 Cir.1981) (Nebraska law); see also Brown v. Link Belt, 666 F.2d 110 (5 Cir.1982) (Louisiana law); Martinez v. Dixie Carriers, Inc., 529 F.2d 457 (5 Cir.1976); Mach v. General Motors Corp., 112 Mich. App. 158, 315 N.W.2d 561 (App. 1982); Cantu v. John Deere Co., 24 Wash. App. 701, 603 P.2d 839 (App. 1979). The prevailing view and the leading federal cases are given in Strong at 686-688. The plaintiff's decedent in Strong, a construction supervisor for a natural gas company, was killed when natural gas, released when a plastic coupling shrank and "pulled out" of an adjoining pipe, exploded as he was checking the leak. The evidence showed that the decedent had twice before repaired "pull-outs" of this type with defendant's plastic couplings at other sites and knew of the danger involved. The Eighth Circuit affirmed a directed verdict for defendant.
In Driekosen v. Black, Sivalls & Bryson, Inc., 158 Neb. 531, 547-548, 64 N.W.2d 88, 97 (1954), the Nebraska Supreme Court adopted the definition of negligent failure to warn found in Restatement of Torts § 388 (1934). This is essentially the same as the current version found in Restatement (Second) of Torts § 388 (1965):
One supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

*260 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
Subsection (b) of this test has been interpreted to mean that there is no duty to warn if the user knows or should know of the potential danger, especially when the user is a professional who should be aware of the characteristics of the product. See Martinez v. Dixie Carriers, Inc., 529 F.2d 457, 464-465 (5th Cir.1976); Madrid v. Mine Safety Appliance Co., 486 F.2d 856, 860 (10th Cir.1973); Lockett v. General Electric Co., 376 F. Supp. 1201, 1208-1209 (E.D.Pa. 1974), aff'd 511 F.2d 1394 (3rd Cir.1975); Bryant v. Hercules, Inc., 325 F. Supp. 241, 247 (W.D.Ky. 1970). Other courts, including this one, have stated substantially the same position, although without explicit reference to the Restatement. See Kerber v. American Mach. & Foundry Co., 411 F.2d 419 (8th Cir.1969); Thibodaux v. McWane Case Iron Pipe Co., 381 F.2d 491, 495 (5th Cir.1967); Hopkins v. E.I. DuPont De Nemours & Co., 212 F.2d 623, 625 (3d Cir.), cert. denied, 348 U.S. 872, 75 S.Ct. 108, 99 L.Ed. 686 (1954); Littlehale v. E.I. DuPont De Nemours & Co., 268 F. Supp. 791, 798 (S.D.N.Y. 1966), aff'd, 380 F.2d 274 (2d Cir.1967).
........
In the realm of strict liability there is a similar principle providing that a manufacturer has no duty to warn when the dangers of a product are within the professional knowledge of the user. Martinez v. Dixie Carriers, Inc., 529 F.2d at 465-467; Madrid v. Mine Safety Appliance Co., 486 F.2d at 860.
See also Hagans v. Oliver Machinery Co., 576 F.2d 97, 101-102 (5 Cir.1978) ("it is generally held that there is no duty to warn when the danger or potentiality of danger is obvious or is actually known to the injured person"); McIntyre v. Everest & Jennings, Inc., 575 F.2d 155, 159-160 (8 Cir.1978), cert. den., 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978) (no warning required for plaintiff who had actual knowledge that if he leaned too far forward on chair equipped with casters, chair would tip forward); Burton v. L.O. Smith Foundry Products Co., 529 F.2d 108, 111 (7 Cir.1976) (no duty to warn when "danger or potentiality of danger is known or should be known to the user"); Ward v. Hobart Manufacturing Co., 450 F.2d 1176, 1188 (5 Cir.1971) (no duty to warn experienced user not to place hand into meat grinder); Kerber v. American Machine & Foundry Co., 411 F.2d 419, 421 (8 Cir.1969) (worker reached into *261 wrong part of moving machine contrary to instructions); Huff v. Elmhurst-Chicago Stone Co., 94 Ill. App.3d 1091, 419 N.E.2d 561, 567 (App.Ct. 1981) (construction worker who knew that wet concrete is caustic was not entitled to a warning to that effect).
Beshada v. Johns-Manville Corp., 90 N.J. 191, 205-206 (1982), recently discussed "risk spreading" and "accident avoidance" as reasons justifying the expansion of the doctrine of strict liability for injuries caused by consumer products. "Risk spreading" is the rationale that the price of the product should reflect the total product cost, including injuries caused by defective products. But in the case before us only the plaintiff's impulsive act in the face of obvious danger caused the accident. The jury found that there was nothing intrinsically wrong with the product, either in design or manufacture. Nor does the "accident avoidance" policy prong support plaintiff's position. Even his own expert conceded that a pictorial warning on the rims or elsewhere was not "going to be very effective" to restrain him from doing what he did. Nor is this a case where an industrial employee was literally chained to a dangerous machine without meaningful choice and no viable economic alternative but day-to-day exposure to serious physical hazard. See Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 167-168 (1979). Our Supreme Court recently said in O'Brien v. Muskin Corp., 94 N.J. 169 (1983):
Proof that the product was defective requires more than a mere showing that the product caused the injury. The necessity of proving a defect in the product as part of the plaintiff's prima facie case distinguishes strict from absolute liability, and thus prevents the manufacturer from also becoming the insurer of a product. See Caterpillar Tractor Co. v. Beck, 593 P.2d 871, 877 (Alaska 1979); Birnbaum, "Unmasking the Test for Design Defect: From Negligent [to Warranty] to Strict Liability to Negligence," 33 Vand.L.Rev. 593, 600 n. 32 (1980). [at 179-180]
There is no duty in our law to create a product that will insure against injury to the most indifferent, adventurous or foolhardy. If there were, we suspect that there would be fewer useful products in the marketplace. We are satisfied that Firestone as a matter of law breached no duty to warn plaintiff *262 in this situation. The recommended safety equipment was in use. The risk was well known and further advertisement would have been superfluous and unnecessary. The hazard was avoidable by exercise of common sense. Moreover, proper use of the product required no exposure to the particular hazard which injured plaintiff. Even the warning recommended by plaintiff's expert would have had concededly very speculative, if any, efficacy in the circumstance. We cannot agree with the dissent which holds in effect that any product capable of causing harm, no matter how obvious, must contain written and pictorial or graphic warnings and that without such warnings the issues of strict liability and proximate cause are always for the jury.
The judgment in favor of the plaintiff is vacated and judgment is entered in favor of defendants.
DREIER, J.A.D. (dissenting).
Defendant in this product liability action appeals from a judgment entered upon a jury verdict in the amount of $255,000 plus interest.
The facts are simple. Plaintiff's arm and hand were injured on November 1, 1978 when he reached into a steel safety cage in which a tire was being inflated on a three-piece truck tire rim that had been assembled by plaintiff. The rim components were manufactured by defendant The Firestone Tire & Rubber Co. (Firestone). Plaintiff, who speaks only Portuguese and is illiterate both in English and Portuguese, had been trained in safety procedures by his employer when originally hired in 1971 and, in fact, had had a similar though less severe accident in 1972, after which he was "retrained" in the use of the safety cage and clip-on air chuck. (A man named Rodriguez told him "to assemble the tire and put it inside the cage."). He assembled hundreds of tires a day for several years.
Firestone specifically recommended the use of the cage and clip-on chuck when multi-piece rims are to be assembled, in order to prevent injury. However, defendant did not place *263 warnings on the rim or recommend that warnings be placed on the safety cage. Plaintiff's theory of the case was stated by his expert, Brenner, viz., that the rims were designed so that separations occurred from time-to-time, and, since a worker would instinctively try to correct the condition, there should have been pictorial warnings on the safety cage to alert the operator that reaching into the cage while the tire was being inflated could cause serious injury. The jury found no design defect, but only a failure to warn.
Plaintiff testified that after clipping on the air chuck, which was preset to inflate the tire to the proper pressure, he left to check another tire. When he returned to the safety cage he saw that the locking ring on the rim components was opening and realized that "it could be a very big accident." He stated: "I immediately, I didn't have time to reason, I just immediately tried to pull the clip out. Because if I didn't, it could kill me and kill everybody that was around there." He therefore reached into the cage to attempt to disconnect the air chuck, at which time the assembly exploded, causing his injury. His arm was mangled, causing permanent loss of function, and necessitating $41,617 in medical bills. The experts from both sides agree that the cage would have effectively protected both plaintiff and the other workers in the area.
Defendant raised four issues on this appeal. First, was the trial court's charge concerning the duty to warn incorrect, since it failed to include defendant's requested charge that there was no duty to warn concerning a danger known to the plaintiff?[1] *264 Second, as a subsidiary issue under point one, could such failure to warn (if a duty to warn existed) have been a proximate cause of plaintiff's injury? Third, should plaintiff's contributory negligence be a bar to recovery? Fourth, was the pre-judgment interest rate improperly set by the court? (There was also a constitutional issue urged which is subsumed within the first point and was not seriously pursued at argument).

I
Defendant and various of the amici curiae (hereafter I will omit reference to the amici) urged that a manufacturer has "no duty to warn a product user who has actual knowledge" of the hazards of a product. The trial judge implicitly recognized the substance of this request to charge, as noted in footnote 1, by stating that the duty to warn is owed "to a user who is ignorant of such dangers and where the manufacturer should have reason to believe that the user will not recognize the product's dangers." [Emphasis supplied]. This argument requires a basic examination of the relative duties of the manufacturer, employer and injured worker, in the light of the pronouncements of our Supreme Court in Bexiga v. Havir Mfg. Corp., 60 N.J. 402 (1972); Cepeda v. Cumberland Engineering Co., 76 N.J. 152 (1978); Freund v. Cellofilm Properties, Inc., 87 N.J. 229 (1981); Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979); Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386 (1982) and O'Brien v. Muskin Corp., 94 N.J. 169 (1983). Although Firestone *265 cites an impressive list of authorities supporting its proposition, they do not interpret the New Jersey law of products liability. There is a confusion, throughout the briefs and many of the cited cases, between the concepts of duty and proximate cause as applied in a strict liability case, as opposed to a negligence action. My colleagues, in their majority opinion, fall into the same error which implicates both the "obvious danger" exception to a manufacturer's duty to warn and the "knowledgeable user" test to determine whether the duty has been satisfied. See majority opinion at 259-261.
We know from Bexiga that a manufacturer of production equipment may not delegate the installation of a safety device to an eventual purchaser of the product. 60 N.J. at 410. Where installation is impractical at the manufacturer's level, Michalko, 91 N.J. at 401-403, teaches us that the duty imposed upon the manufacturer is to warn the purchaser adequately so that the particular users of the product will be properly trained and alerted to the dangers involved. Firestone gave some instructions, in the form of a wall chart (written in English), which plaintiff's employer had posted. The sufficiency of these instructions, as warnings, was for the jury, after plaintiff's expert had testified as to their inadequacy. The court in Michalko noted:
... A reasonable jury could find that the inclusion of a warning by [manufacturer] would have increased the chances that [employer] would have added a safety device or taken other measures, such as affixing suitable warnings or giving specific cautionary instructions for the benefit of the operators of the machine to reduce the risk of danger.
Moreover, a proper warning could have been directed to the foreseeable users of the dangerous machine. Such a warning by defendant could have served to put [employer's] employees on notice of the inherent dangers in using the machine without a safety device. This might have reduced the risk of injury. Thus, we have held that in some circumstances a manufacturer may have a duty to attach a suitable warning to the machine itself to caution the operator about the danger of using it without a protective device.... [Id. at 402-403]
Under Cepeda the mere presence of a safety device may not be enough. The device may have to be refined (there with the addition of an interlock; here perhaps with the addition of an *266 appropriate warning) before the product is found to be free of defects. 76 N.J. at 181. Suter shows us that the negligent conduct of an employee will not be considered as a bar to, or by way of reduction of, an assessment of liability against a manufacturer whose defective product causes the employee's injury. 81 N.J. at 168. From Freund we see that a failure-to-warn case is one of strict liability, not negligence, and that the warnings must "be sufficient to adequately protect any and all foreseeable users from hidden dangers presented by the product." 87 N.J. at 242-243 (after noting that "knowledge of the dangerous trait of the product is imputed to the manufacturer."). In O'Brien we are told that:
Fundamental to the determination of a products liability case, including one predicated on a defective design or inadequate warning, is the duty of the manufacturer to foreseeable users. The duty includes warning foreseeable users of the risks inherent in the use of that product, see Michalko, 91 N.J. at 403, and not placing defective products on the market. Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 163 (1978); see Restatement (Second) of Torts § 402A (1965). A manufacturer who breaches these duties is strictly liable to an injured party. That liability reflects the policy judgment that by marketing its product, a manufacturer assumes responsibility to members of the public who are injured because of defects in that product. Restatement (Second) of Torts § 402A comment c (1965). [94 N.J. at 180; emphasis supplied]
We note from the Michalko, Freund and O'Brien quotes that the duty to warn is not imposed as to a particular user depending on his or her sophistication, but rather is to the class of users. As has been stated and reiterated by our Supreme Court "in determining whether a manufacturer has breached its duty, we focus on the product." O'Brien v. Muskin Corp., supra at 180 (citing Michalko, Freund and Suter along with other authority). Since the duty is to place on the market a product free of defects, and this duty attaches at the time the product is introduced into the stream of commerce, a particular user's subjective knowledge of a danger does not and cannot modify the manufacturer's duty. Such subjective knowledge may be either relevant or decisive in determining whether, when the proximate cause of this defect is assessed, the manufacturer will be held liable, but it does not limit the manufacturer's duty to *267 distribute only defect-free products into the marketplace. The majority here has failed to differentiate between the concepts of duty and proximate cause.
The fact that the danger may have been obvious may affect the duty. The "obvious danger" rule is correctly applied when dealing with the lack of warning where the risk is apparent, e.g., as noted in Prosser and quoted by the majority, that a knife cuts, a match burns or the like. See Torsiello v. Whitehall Labs., 165 N.J. Super. 311, 320 (App.Div. 1979). But when defendant and the majority apply the rule in an industrial setting where dangers abound, the rule has less force. The "obvious danger" rule is itself in disrepute. It grew from the New York case of Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (App. 1950), which was overruled in Micallef v. Miehle Co., 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (App. 1976). Other jurisdictions made the same shift. See, e.g., Downey v. Moore's Time-Saving Equipment, Inc., 432 F.2d 1088 (7 Cir.1970), questioned in Collins v. Ridge Tool Company, 520 F.2d 591, 595 (7 Cir.1975), cert. den. 424 U.S. 949, 96 S.Ct. 1421, 47 L.Ed.2d 355 (1976) where the court noted:
... [T]here is an indication that the more recent trend of the cases evidences an increasing dissatisfaction with the Campo doctrine and opts instead in favor of an approach which reflects an effort to `discourage misdesign rather than encouraging it in its obvious form.' [Citation omitted]
See also Olson v. A.W. Chesterton Co., 256 N.W.2d 530, 537 (N.D. 1977); Harris v. Karri-On Campers, Inc., 640 F.2d 65, 76 (7 Cir.1981) (applying West Virginia law); Franchetti v. Intercole Automation, Inc., 529 F. Supp. 533, 538 (D.Del. 1982); Casey v. Gifford Wood Co., 61 Mich. App. 208, 232 N.W.2d 360, 365 (App. 1975); Auburn Mach. Works Co., Inc., v. Jones, 366 So.2d 1167 (Fla. Supp. 1979); 1 A Frumer and Friedman, Products Liability, § 8.06. The "obvious danger" rule is not the same as the majority's asserted "knowledgeable user" rule that would bar the claim of a plaintiff with subjective knowledge of the danger. See further discussion at n. 3, infra.
*268 The lack of a pictorial warning has been held to raise a jury question as to the adequacy of the warning to protect foreseeable uneducated workers. Hubbard-Hall v. Silverman, 340 F.2d 402, 405 (1 Cir.1965). In this case, had there been such a pictorial warning on the opening in the cage showing, for example, an arm extended into the cage with a red "X" across the picture, or a similar pictorial warning showing that the cage afforded protection from an exploding tire rim assembly, perhaps plaintiff at the last second would not have extended his arm into the cage. Plaintiff's expert testified that pictorial warnings might have helped "a little" if they had been placed on the cage[2], and so there was a foundation in the record for a jury to have determined that plaintiff's employer should have been instructed by Firestone to place such warnings. Michalko, 91 N.J. at 402. I, therefore, would determine that Firestone had a duty to warn the class of users of which plaintiff was a part, and this duty does not depend upon the sophistication of plaintiff or any other individual member of this class[3].

*269 II
The prior knowledge of plaintiff comes into play when we consider the proximate cause aspects of this case. If a worker knows of a particular danger and the protection to be afforded by a safety device, the lack of a warning from the manufacturer will not materially contribute to the happening of the accident. If at the moment of the accident the worker proceeds to disregard such knowledge and does not avail himself of this protective device, the lack of warning becomes immaterial. As noted above, this has nothing to do with the lack of duty on the part of the manufacturer, but only with the fact that the lack of adequate warning was not a proximate cause of the accident. Conversely, if a worker's knowledge of the safety to be afforded by the protective device (which knowledge he may once have possessed but which under the stress of the moment may have been superseded[4]) would have been enhanced by the presence *270 of an adequate warning, a jury might find that its omission was a substantial factor in bringing about the accident, and thus was a proximate cause. This analysis parallels that of the Supreme Court in Michalko. There the court said:
Defendant argues that even if it had given a warning, there was no proof that [the employer] would have installed a safety device. Implicated in that argument, however, is the issue of proximate cause. The question whether the failure to warn proximately caused plaintiff's injury is a factual dispute that the jury should decide. ... [91 N.J. at 402; emphasis supplied]
In this case, we must examine plaintiff's subjective knowledge as it bears upon the proximate cause issue. According to his testimony he knew that the separating ring assembly posed a danger, but under the pressure of the moment he also thought that the recommended safety device  the steel cage and remote air chuck  would not protect him. Therefore, he felt he had to risk reaching into the cage in order to disconnect the air to prevent the explosion from killing him and "everybody that was around there." Given this state of affairs, can it be said that a reasonable jury could not have found that Firestone's failure to recommend proper pictorial warnings was a material contributing factor to the happening of this accident?
The problem here is that, although the jury should have been instructed as to the manufacturer's duty on one hand and proximate cause on the other, with specific examples of how the facts of this case related to the proximate cause issue, the charge as a whole did not adequately explain this dichotomy to the jury. The court did charge generally that it would have to find that "the failure to give adequate warnings of the dangerous [characteristics] of the product or the failure to give proper directions as to the safe use of the product was a proximate cause of the injury resulting to [plaintiff]." See Suter, supra, 81 N.J. at 176; Freund, supra, 87 N.J. at 234. The trial judge also told the jury that plaintiff alleged that the injuries were proximately caused by a design defect and/or defendant's failure "to *271 provide adequate warnings regarding the assembling of a tube tire on a multi-piece rim manufactured by the defendant", and later
A manufacturer is liable for the improper design of the product including the giving of inadequate warnings as to the dangerous [characteristics] or the failure to give adequate warnings as to the danger, and also including the giving of inadequate instructions as to its safe use, or the failure to give adequate instructions as to its safe use.
The court in the charge thus noted the various elements to be proven, but failed to tie these general rules to the problem at hand.[5] In this factual circumstance, considering the court's focus on the rim assembly, rather than on the lack of pictorial warnings as such omission would constitute a proximate cause for the happening of this accident, the case should be retried.
Since the majority has determined that no duty existed here, the other issues raised by defendant were not treated. My analysis requires such treatment, so I will briefly touch on them.

III
Defendant urges that we should not apply Suter's prohibition against assessing an employee's contributory negligence to the facts of this case. Firestone urges that in Bexiga, Cepeda and Suter inadequate safety devices were provided, whereas in this case the safety cage would have been an adequate protection for plaintiff. Defendant overlooks, however, that the claim here is that the cage was inadequate because it lacked proper warnings. I see no valid distinction, and would apply Suter's prohibition.

IV
Defendant urges that pre-judgment interest should not have been assessed at the present 12% rate, but rather should have been adjusted in the same manner as post-judgment interest is *272 treated under the recent amendment to R. 4:42-11(a). Although Kotzian v. Barr, 152 N.J. Super. 561, 564 (App.Div. 1977), rev'd on other grounds, 81 N.J. 360 (1979) and Simons v. Saaz, 147 N.J. Super. 143 (App.Div. 1977) state that the current judgment interest rate should be applied across the board, these decisions were rendered before the Supreme Court's amendment of R. 4:42-11(a). I see no reason why the same rationale should not apply to pre-judgment interest under R. 4:42-11(b). Had the Kotzian and Simons courts had the benefit of this recent change in the law, I assume they would have employed a staggered interest computation. If this matter is remanded, and a judgment is obtained, the interest should be so calculated.
I would reverse the judgment of the Law Division and remand this matter for a new trial in accordance with this opinion.
NOTES
[1] The requested charge was as follows:

If you find that the plaintiff, Armando Campos, had received warnings or instructions sufficient to alert him to the risk or danger with which he was confronted at the time of his accident, regardless of the manner in which or the source from whom he received those warnings or instructions, then you may not find Firestone liable by reason of any failure to warn plaintiff. This is so irrespective of the adequacy or inadequacy of the warnings given by Firestone with its product. Where a person already has received warnings adequate to inform him of the danger involved, whether these warnings have been received from a third-party, through his own prior experience, or otherwise, the law places no additional duty on the manufacturer of the product to warn that person of the specific danger.
The court instead gave the following charge:
A manufacturer has a duty to warn foreseeable users of hidden dangers of the product before the foreseeable use or foreseeable manner of use of the product is dangerous to a user who is ignorant of such dangers and where the manufacturer should have reason to believe that the user will not recognize the product's dangers.
Firestone specifically objected to the court's charge.
[2] The thrust of Brenner's testimony was that the tolerances permitted for the tire rim parts were such as could cause this type of accident, and that a worker's instinctive reaction would be to try to stop the rim separation. The common sense of a warning even without expert testimony, given the extent of the danger, could have been apparent to the jury.
[3] Parenthetically I note that where there are different classes of potential users, different warnings may be employed to discharge the manufacturer's duty, depending on the sophistication of the class. For example, a racing car sold to afficionados of the sport may not have to contain warnings as to operation as the same car marketed to the general public. See Turner v. International Harvester, 133 N.J. Super. 277, 292-293 (Law Div. 1975); D'Arienzo v. Clairol, Inc., 125 N.J. Super. 224, 234-235 (Law Div. 1973) (where Judge Ackerman clearly expresses an objective test in evaluating warnings); cf. Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841, 860-861 (5 Cir.1967); and Martinez v. Dixie Carriers, Inc., 529 F.2d 457, 466 (5 Cir.1976) where, although the court correctly phrased the test it was applying ("[The manufacturer] was entitled to rely on the professional expertise of those who could be reasonably expected to come in contact with its product, and to tailor its warnings accordingly."), it lapsed into language of subjective knowledge of the users when discussing earlier cases. This is an example of "knowledgeable user" exception, usually used to distinguish the duty owed to warn a professional or expert as opposed to a lay user. I would reject the "knowledgeable user" rule (except as it applies to defining a duty owed to a class of skilled professional or otherwise knowledgeable users) and prefer to rely instead upon the proximate cause analysis described in Part II of this opinion.
[4] Cf. Zentz v. Toop, 92 N.J. Super. 105, 114-115 (App.Div. 1966), aff'd o.b. 50 N.J. 250 (1967), where an employee tripped over an unmarked guy wire while carrying a load of hot tar. The court held that even if plaintiff knew or was chargeable with knowledge of the danger, his attention might have been so distracted that he may have failed to protect himself. Defendant's failure to take steps to highlight the danger, notwithstanding plaintiff's knowledge, raised a jury question.

In citing the Prosser quote, supra at 258-259, and the numerous "obvious danger" cases, the majority misapplies their principles. I take no issue with some of these cases, as least insofar as they comport with the Restatement standard that no warning need be given "when the danger, or potentiality of danger, is generally known and recognized" 2 Restatement, Torts 2nd, § 402A, comment (j) at 353; see, e.g., the portions of Height v. Kawasaki Heavy Industries, Ltd., 190 N.J. Super. 7 (App.Div. 1983) quoted by the majority, supra at 258-259; but here the obviousness of the danger (or knowledge of the protection therefrom afforded by the cage) was a jury question, considering the stress of the moment. Were this not so, a manufacturer could avoid placing most danger signs in an industrial setting, since they warn of risks either "obvious" or known to the worker. They are mandated, however, to protect even the stressed or otherwise distracted worker.
[5] As was noted in Suter: "The instruction should be tailored to the factual situation to assist the jury in performing its fact finding responsibility." 81 N.J. 176.