ARMANDO CAMPOS AND PURESA CAMPOS, PLAINTIFFS-APPELLANTS, v. THE FIRESTONE TIRE & RUBBER COMPANY, DEFENDANT-RESPONDENT.

Argued October 22, 1984—Decided December 21, 1984.

200

*William H. Sheil* argued the cause for appellants.

*Erwin N. Griswold,* a member of the District of Columbia bar, argued the cause for respondent (*Ribis, McCluskey, Ruane & Graham,* attorneys; *Jerome J. Graham, Jr.,* of counsel; and *George C. Jones,* on the brief).

*Joseph A. Gervasi* submitted a letter in lieu of brief on behalf of *amicus curiae* National Machine Tool Builders' Association (*Young, Rose & Millspaugh,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

This failure-to-warn product liability case presents for consideration the effect of a foreseeable user's knowledge of a danger on a manufacturer's responsibility to distribute a product free from defect. Does that knowledge eliminate any duty to warn? Or is it a link to be considered on whether the failure to warn was a substantial factor in causing the accident and injuries?

Plaintiff Armando Campos [1] was born and raised in Portugal. He emigrated to this country in 1971. Shortly after his arrival in the United States he obtained a job with Theurer Atlantic, Inc. (Theurer), a manufacturer of truck trailers.

In connection with its trailer operation Theurer placed new truck tires on rims before their installation on the trailers. Plaintiff's work was to assemble the tires. This involved placing a tire containing an inner tube on a three-piece rim assembly, putting the assembled tire into a steel safety cage designed to prevent injuries in case the assembled parts separated under pressure, and then inserting air into the tire by inflating the tube inside it. He generally worked a five-day, forty-hour week, and assembled about eight tires an hour. Plaintiff's employment continued in this manner until the accident on November 1, 1978.

About 9:30 a.m. on that day, plaintiff was readying a new Dunlop tire to be mounted on a trailer. He assembled the three-piece rim and tire, placed the tire in the cage, and clamped the air pressure hose into place so that air was being forced into the tire. He then noticed that a locking element on the rim components was opening. Fearing that there would "be a very big accident" if the pieces separated under pressure, he immediately tried to disengage the hose. He explained, "Because if I didn't, it could kill me and kill everybody that was around

---

[1] Puresa Campos, Armando's wife, also sued for *per quod* damages.

there." As he reached into the cage, the assembly exploded and plaintiff was severely injured.

Defendant, Firestone Tire & Rubber Company, had manufactured the rim assembly. We were advised at oral argument that Theurer, not defendant, had made the protective cage. Defendant had delivered manuals describing the proper method of preparing the tire to its customers, including Theurer. Defendant had also given Theurer a large chart prepared by the National Highway Traffic Safety Administration of the United States Department of Transportation. That chart was kept on the wall at the Theurer shop and contained instructions on safety precautions, including the following advice: "ALWAYS INFLATE TIRE IN SAFETY CAGE OR USE A PORTABLE LOCK RING GUARD. USE A CLIP-ON TYPE AIR CHUCK [2] WITH REMOTE VALVE SO THAT OPERATOR CAN STAND CLEAR DURING TIRE INFLATION." However, Campos could not read or write Portuguese or English and these written warnings were therefore ineffective.

In addition to the written instructions, plaintiff had received some oral instructions from his supervisor. He had been told that a truck tire was to be placed in the cage before inflating it. Further, he had had a similar accident in July, 1972, when, to prevent a mishap, he had inserted his hand into the protective cage while air was being blown into the tire. The injuries that he received then were less severe than in this accident.

Plaintiff proceeded against defendant, Firestone Tire & Rubber Company, on two strict liability theories, improper design and failure to warn. His contention that the rim had been improperly designed because it should have consisted of one rather than three pieces was rejected by the jury. His second claim, which was accepted by the jury, was that defendant had

---

[2]This is a device that clamps on the air hose so as to hold the air hose and valve in place when air is being injected into the tube within the tire. The worker is then free to stand clear while the tire is being inflated.

not adequately warned him of the danger and that that failure to warn was a proximate cause of his injury. The jury returned a verdict of $255,000.

Defendant appealed. A divided Appellate Division reversed and entered judgment for the defendant. *See* 192 *N.J.Super.* 251 (1983). This Court granted plaintiff's petition for certification. 96 *N.J.* 310 (1984).

I

We recently observed that the defect in a strict liability action may consist of a manufacturing flaw, a design defect, or an inadequate warning. *Feldman v. Lederle Laboratories,* 97 *N.J.* 429, 449 (1984). Plaintiff did not allege the existence of a manufacturing flaw and his claim of a design defect has been rejected by the jury. The propriety of that rejection is not before us. What is before us is plaintiff's assertion that the warning given was inadequate.

Plaintiff's expert suggested that defendant should have produced a graphic or symbolic warning against inserting one's hand in the protective cage during the inflation process. He thought that it would have been appropriate to have prepared a sign containing a symbol similar to the picture of a cigarette with a diagonal red line across that informs one not to smoke. He testified that the manufacturer should have anticipated that illiterate people would be exposed to these dangers and added, "we have to do things which will protect them as well."

Although plaintiff's similar accident six years earlier may have served as some warning against reaching into the cage while the tire was being inflated, plaintiff's expert stated that plaintiff's "instinctive" reaction was to try to stop the accident by inserting his hand into the cage. Plaintiff's expert responded as follows to a question regarding how symbols would have helped the plaintiff avoid the accident:

A. Not very much. A little perhaps. That is, if there was a reminder in graphical form against putting his hands in telling him that explosive separa-

tions can take place, and he's instructed verbally by somebody in his own native tongue as to what that symbol means. Then at least that amount of information has been provided to him.

I don't think it's going to be very effective beyond a certain point because this particular incident situationally starts before the tire even gets into the cage. It starts either on the assembly line or it starts when the man is assembling it and doesn't assemble it correctly. I certainly agree that the warning graphical which the man let's say understands is not—it's better than nothing, but not very much better.

Q. Is it better than the pain caused by a prior injury in terms of suppressing his instincts for putting his hands in the cage?

A. No.

The Appellate Division majority and dissenting opinions viewed the effect of this evidence differently. The majority relied on the proposition that "there is no duty to warn where the danger is obvious and the user knowledgeable." 192 *N.J. Super.* at 267. It concluded that this was such a case and held that there being no duty to warn this plaintiff, plaintiff's case necessarily failed. The dissent, acknowledging that the "fact that the danger may have been [objectively] obvious [could] affect the [manufacturer's] duty," *id.,* 192 *N.J.Super.* at 267, contended that the particular plaintiff's subjective knowledge is relevant on the issue of proximate cause rather than duty, *id.,* 192 *N.J.Super.* at 269. The dissent concluded that since the trial court's charge on proximate cause had consisted only of general principles without relating them to the factual circumstances, the cause should be remanded for a new trial. *Id.,* 192 *N.J.Super.* at 270–71.

The duty to warn in the strict liability cause of action is based on the notion that absent a warning or adequate warning, a product is defective, in that it is not reasonably fit, suitable, or safe for its intended purposes. *Freund v. Cellofilm Properties, Inc.,* 87 *N.J.* 229, 242 (1981). In testing the need and adequacy of a warning, the manufacturer is deemed to know the dangerousness of the product. It is with that knowledge assumed that the manufacturer's conduct is to be gauged. *Feldman, supra,* 97 *N.J.* at 450; *Freund, supra,* 87 *N.J.* at 240; *Phillips v. Kimwood Mach. Co.,* 269 *Or.* 485, 498, 525 *P.*

2d 1033, 1039 (1974); 2 *L. Frumer & M. Friedman, Products Liability* § 16A[4][f][iv][B], at 3B–136.2(g) (1976). The adequacy of the warning is to be evaluated in terms of what the manufacturer actually knew and what he "should have * * * known based on information that was reasonably available or obtainable and [that] should have alerted a reasonably prudent person to act." *Feldman, supra,* 97 *N.J.* at 452. In this case there is no dispute that the manufacturer had actual knowledge of the risk. *Freund, supra,* 87 *N.J.* at 243.

Generally, the duty to warn extends only to foreseeable users of the product and to uses that reasonably should have been objectively anticipated. "Fundamental to the determination of a products liability case, including one predicated on a defective design or inadequate warning, is the duty of the manufacturer to foreseeable users." *O'Brien v. Muskin Corp.,* 94 *N.J.* 169, 180 (1983). If the use of the product is beyond its intended or reasonably anticipated scope (thereby not being probative of whether the product was fit, suitable, and safe), there may be no duty to warn. *See Brown v. United States Stove Co.,* 98 *N.J.* 155, 168 (1984). Thus, the manufacturer of a knife is not chargeable with a failure to warn that the knife is sharp and should not be used as a toothpick. *See Suter v. San Angelo Foundry & Mach. Co.,* 81 *N.J.* 150, 159 (1979).

A manufacturer has a duty to warn such foreseeable users of all hidden or latent dangers that would arise out of a reasonably anticipated use of its product. As we have heretofore stated, the duty to warn embodies "the notion that the warning be sufficient to adequately protect any and all foreseeable users from hidden dangers presented by the product." *Freund, supra,* 87 *N.J.* at 243. That accords with the general view. 1A *L. Frumer & M. Friedman, supra* § 8.04, at 184–184.3 ("If it is latent, other prerequisites being present, there is a duty to warn.").

■ We turn next to consider whether a duty to warn exists when the danger is obvious. Although some jurisdictions have adopted an "obvious danger rule" that would absolve a manufacturer of a duty to warn of dangers that are objectively apparent, *see* 2 *R. Hursch & H. Bailey, American Law of Products Liability* 2d § 8:15, at 181–84 (1974) (summarizing case law on the subject), in our state the obviousness of a danger, as distinguished from a plaintiff's subjective knowledge of a danger, is merely one element to be factored into the analysis to determine whether a duty to warn exists. A manufacturer is not automatically relieved of his duty to warn merely because the danger is patent. *See Schipper v. Levitt & Sons,* 44 *N.J.* 70, 81, 87 (1965) (suggesting that obviousness of danger should not necessarily preclude recovery in negligence against mass developer of homes); Marshall, "An Obvious Wrong Does Not Make a Right: Manufacturers' Liability for Patently Dangerous Product," 48 *N.Y.U.L.Rev.* 1065 (1973); Darling, "The Patent Danger Rule: An Analysis and a Survey of its Vitality," 29 *Mercer L.Rev.* 583 (1978). Rather, the general proposition is as stated in *Michalko v. Cooke Color & Chem. Corp.,* 91 *N.J.* 386, 403 (1982):

> [A] manufacturer is under a duty to warn owners and foreseeable users of the dangers of using a particular machine if, without such a warning, the machine is not reasonably safe. A manufacturer which does not caution against the dangers inherent in the use of its product should be held strictly liable for injuries resulting from the absence of such warnings. [*Id.,* 91 *N.J.* at 403 (footnote omitted).]

■ Whether a duty exists "involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Goldberg v. Housing Auth.,* 38 *N.J.* 578, 583 (1962). The additional cost of a warning will in most cases have but a slight impact on the risk-utility analysis, since such cost would generally have little, if any, effect on a product's utility. *Freund, supra,* 87 *N.J.* at 238 n. 1, 242; *see also Cepeda v. Cumberland Eng'g Co.,* 76 *N.J.* 152, 174 (1978) (listing risk-utility factors). More relevant questions in the warning context include the following. Is the lack of the

warning consonant with the duty to place in the stream of commerce only products that are reasonably safe, suitable, and fit? Will the absence of a duty encourage manufacturers to eliminate warnings or to produce inadequate warnings? Is the danger so basic to the functioning or purpose of the product— for example, the fact that a match will burn—that a warning would serve no useful purpose?

We have no difficulty in holding that under the facts and circumstances of this case defendant had a duty to warn plaintiff of the danger of inserting his hand into the cage. Defendant has consistently argued that "[t]his case is not about objective knowledge" and that the "obvious danger rule," even if it were the law in New Jersey, is inapplicable. Defendant's counsel also conceded on oral argument that this duty to warn existed irrespective of the fact that defendant did not manufacture or sell the cage. *Cf. Bexiga v. Havir Mfg. Corp.*, 60 *N.J.* 402, 410 (1972) (holding a manufacturer responsible for failing to include safety devices on its machine despite its expectation that someone would install these safety devices, since the public interest required that the duty of assuring such installation should not be left to others); *see also Davis v. Wyeth Laboratories, Inc.*, 399 *F.*2d 121, 131 (9th Cir.1968) (holding that prescription drug manufacturer may have a duty to see that warnings of the drug's risks, distributed to the medical profession, in fact reached the drug's ultimate consumers). Moreover, there was evidence that written warnings were insufficient and that pictorial warnings should have been used. *See Hubbard-Hall Chem. Co. v. Silverman*, 340 *F.*2d 402, 405 (1st Cir.1965). In view of the unskilled or semi-skilled nature of the work and the existence of many in the work force who do not read English, warnings in the form of symbols might have been appropriate, since the employee's "ability to take care of himself" was limited. *See Cepeda v. Cumberland Eng'g Co.*, *supra,* 76 *N.J.* at 199 (Schreiber, J., concurring and dissenting).

## II

Defendant has strongly urged that it should be exonerated as a matter of law, not because the danger was objectively obvious, but because plaintiff had actual knowledge of the danger. Because of that subjective knowledge, the defendant argued, a warning requirement was irrelevant.

A duty to warn is not automatically extinguished because the injured user or consumer perceived the danger. That preexisting knowledge, however, might negate a claim that the absence of a warning was a cause in fact of plaintiff's injury. We thus agree with the dissenting Appellate Division opinion that viewing the plaintiff's conduct subjectively, the fact finder might properly assess plaintiff's awareness of the danger in terms of causation rather than duty. As the dissent has commented:

> Since the duty is to place on the market a product free of defects, and this duty attaches at the time the product is introduced into the stream of commerce, a particular user's subjective knowledge of a danger does not and cannot modify the manufacturer's duty. Such subjective knowledge may be either relevant or decisive in determining whether, when the proximate cause of this defect is assessed, the manufacturer will be held liable, but it does not limit the manufacturer's duty to distribute only defect-free products into the marketplace. [192 *N.J.Super.* at 266–67.]

*See also Michalko, supra,* 91 *N.J.* at 402 ("The question whether the failure to warn proximately caused plaintiff's injury is a factual dispute that the jury should decide."); *accord Whitehead v. St. Joe Lead Co.,* 729 *F.*2d 238, 249 (3d Cir.1984).

We continue to adhere to the principle that "the defect [must have] *caused injury* to a reasonably foreseeable user." *Michalko, supra,* 91 *N.J.* at 394 (emphasis supplied). Professor, now United States District Court Judge, Dean Keeton stated the proposition in this manner:

> If the basis for recovery under strict liability is inadequacy of warnings or instruction about dangers, then plaintiff would be required to show that an adequate warning or instruction would have prevented the harm. [Keeton, "Products Liability—Inadequacy of Information," 48 *Tex.L.Rev.* 398, 414 (1970).]

Here the issue of causation was vigorously contested. Defendant claimed that a prior accident in which plaintiff had been injured by inserting his hand into the cage while a tire was being inflated had served as a dramatic warning and yet was of no avail. In addition, there was evidence that plaintiff's conduct in putting his hand into the cage was an instinctive reaction and that a pictorial warning therefore would not have prevented the accident. *See G. Calabresi, The Costs of Accidents: A Legal and Economic Analysis* 109 (1972) (noting that specific deterrence is not served in circumstances when individuals cannot control their acts). Indeed, plaintiff's own expert stated that a pictorial warning might have been of little help in preventing the accident. In view of the crucial role that causation played in the case, it was essential that an appropriate charge on that issue be given to the jury.

A strict liability charge to a jury "should be tailored to the factual situation to assist the jury in performing its fact finding responsibility." *Suter, supra,* 81 *N.J.* at 176, quoted in *Freund, supra,* 87 *N.J.* at 242. The instructions should set forth an understandable and clear exposition of the issues, and should cover all essential matters. These include proximate cause and its place in the liability scheme. *See Kreis v. Owens,* 38 *N.J.Super.* 148, 155–56 (App.Div.1955). A proper jury charge is essential for a fair trial. *State v. Green,* 86 *N.J.* 281, 287 (1981); *Gabriel v. Auf Der Heide-Aragona,* 14 *N.J.Super.* 558, 563–64 (App.Div.1951).

The trial court charged only generally that plaintiff had the burden of proving that the failure to give adequate warnings was a proximate cause of the accident and injuries and that the failure was a substantial factor in bringing about the happening of the accident. No attempt was made to place this issue before the jury in the factual context of the case. *See Cunningham v. Charles Pfizer & Co.,* 532 *P.*2d 1377, 1382–83 (Okla.1975); *Greiner v. Volkswagenwerk Aktiengesellschaft,* 429 *F.Supp.* 495, 497 (E.D.Pa.1977). Indeed, plaintiff made

little, if any, showing that with a proper warning the accident would not have occurred. Although there may be some question whether plaintiff sustained his burden of proving causation, *see Brown v. United States Stove Co., supra,* 98 *N.J.* 155, we are of the opinion that the matter should be remanded for a new trial. *See also* Twerski, "Seizing the Middle Ground Between Rules and Standards in Design Defect Litigation: Advancing Directed Verdict Practice in the Law of Torts," 57 *N.Y.U.L.Rev.* 521, 562 (1982) (noting that in failure to warn products liability cases some courts [3] have helped plaintiffs overcome the burden of proof by positing a rebuttable presumption that the warning would have been heeded if given).

## Conclusion

The judgment of the Appellate Division entering a judgment in favor of the defendant is reversed; the plaintiff's cause of action predicated upon a failure to provide an adequate warning is remanded for a new trial. Costs to abide the event.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.

---

[3]Professor Twerski cited as examples *Reyes v. Wyeth Laboratories, Inc.,* 498 *F.*2d 1264, 1281 (5th Cir.), *cert.* denied, 419 *U.S.* 1096, 95 *S.Ct.* 687, 42 *L.Ed.*2d 688 (1974); *Davis v. Wyeth Laboratories, Inc.,* 399 *F.*2d 121, 130 (9th Cir.1968); *Nissen Trampoline Co. v. Terre Haute First Nat'l Bank,* 332 *N.E.*2d 820 (Ind. 1975), rev'd on other grounds, 265 *Ind.* 457, 358 *N.E.*2d 974 (1976); *Technical Chem. Co. v. Jacobs,* 480 *S.W.*2d 602 (Tex.1972).