Myrtle K. WADE and Myrtle K. Wade, Executrix of the Estate of William J. Wade, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants.

Civ. No. # 89–2019(SSB).

United States District Court, D. New Jersey.

Sept. 17, 1990.

Law Offices of David M. Weinfeld by Donald S. Burak, Merchantville, N.J., for plaintiff.

McCarter & English by Andrew T. Berry, Newark, N.J., for defendants Celotex Corp., Fibreboard Corp., Kenne Corp., Owens-Illinois, Inc., Pittsburgh Corning Corp.

Manta and Welge by Richard S. Mannella, Cherry Hill, N.J. for defendant PPG Industries, Inc.

Wilbraham & Coleman by Elaine Zamula, Princeton, N.J., for defendants Armstrong World Industries, Inc., National Gypsum Co., Turner & Newall, plc., U.S. Gypsum Co.

Stradley, Ronon, Stevens & Young by John J. Murphy, III, Princeton, N.J., for defendant Hopeman Brothers, Inc.

Horn, Kaplan, Goldberg, Gorny & Daniels by David A. Sacks, Atlantic City, N.J., for defendant Owens-Corning Fiberglas Corp.

Marshall, Dennehey, Warner, Coleman & Goggin by Richard L. Goldstein, Marlton, N.J., for defendant Manville Corp. Asbestos Disease Compensation Fund.

Martin, Crawshaw & Mayfield by Bruce M. Gunn, Westmont, N.J., for defendant Eagle-Picher Industries, Inc.

## OPINION

BROTMAN, District Judge.

Presently before the court is the motion of defendant PPG Industries, Inc. ("PPG") for summary judgment pursuant to Fed.R. Civ.P. 56 asserting that plaintiff has failed to come forth with any evidence establishing William Wade's exposure to any asbestos-containing product distributed by it. Also before the court is the motion of defendants Celotex Corporation, Fibreboard Corporation, Kenne Corporation, Owens-Illinois, Inc., and Pittsburgh Corning Corporation for summary judgment. Defendants Armstrong World Industries, Inc., Turner & Newall, plc., National Gypsum Company, United States Gypsum Company, Hopeman Brothers, Inc., Owens-Corning Fiberglas Corporation, Manville Corporation Asbestos Disease Compensation Fund, and Eagle-Picher Industries, Inc. join this motion (collectively, the "Celotex defendants"). Like PPG, the Celotex defendants assert that summary judgment is appropriate as plaintiffs have failed to establish William Wade's exposure to defendants' asbestos-containing products. In addition, the Celotex defendants argue that summary judgment must be entered as plaintiffs' claims are barred by the statute of limitations.[1]

## I. FACTS AND PROCEDURE

Plaintiffs filed a complaint in this action in the United States District Court for the Eastern District of Pennsylvania on November 18, 1988 alleging that William Wade suffered from asbestosis resulting from his occupational exposure to asbestos-containing products. The complaint contains claims for negligence, strict liability, conspiracy, breach of warranty, neighborhood and household exposure, and wrongful death. The matter subsequently was transferred to this court. On January 23, 1989, William Wade died, and substitution of plaintiff was permitted by the court on June 19, 1989.

Presently before the court are the motions of the Celotex defendants and defendant PPG for summary judgment. Defendants argue that plaintiff has failed to present any evidence indicating that William Wade was ever exposed to their asbestos-containing products; hence, they argue that defendants are entitle to summary judgment as a matter of law. Plaintiff

---

**1.** Defendant Hopeman Brothers, Inc. joins the Celotex defendants' motion only in as so far as it asserts plaintiff's claims are barred by the statute of limitations.

asserts that there is a genuine issue of material fact as to William Wade's exposure to the Celotex defendants' asbestos-containing products. As to defendant PPG, plaintiff essentially concedes that William Wade was never exposed to an asbestos-containing product of PPG, but contends summary judgment is inappropriate as to the conspiracy claim against PPG.[2] In addition to their product identification argument, the Celotex defendants assert that summary judgment must be granted as plaintiff's claims are barred by the statute of limitations, a contention which plaintiff disputes. The court will address each of defendants' arguments in turn.

## II. DISCUSSION

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis

for a jury finding in that party's favor." J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing Anderson, 477 U.S. 242, 106 S.Ct. 2505, and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. Anderson, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### A. Untimely Discovery Objections

As an initial matter, the court must address the various contentions of the parties regarding improper discovery responses. The Celotex defendants allege that plaintiff's responses to interrogatories requesting product identification were improper as plaintiff only identified William Wade's co-workers. Similarly, plaintiff now objects to defendant PPG's responses to interrogatories regarding the conspiracy claim.

The complaint in this action was originally filed in November of 1988, and was transferred to this court in March of 1989. Discovery was extended to and closed on May 15, 1990. No objections to the close of discovery on that date were filed. This case is set for trial on September 17, 1990, and a joint pretrial order was entered on August 3, 1990. Until these motions for summary judgment, none of the parties objected to the other parties' discovery responses. The Celotex defendants' objection to plaintiff's discovery responses is cited as grounds for summary judgment and plaintiff now applies for a continuance to permit additional discovery pursuant to Fed.R.Civ.P. 56(f). The court

---

**2.** Plaintiff's response to PPG's motion was untimely. General Rule 12 C. Defendant PPG moves to strike plaintiff's response. This court

will consider plaintiff's submissions, but plaintiff's counsel should note that the court will not regard kindly future untimely submissions.

notes that all of the parties' objections to discovery responses properly should have been raised before the magistrate.

▆ The interrogatory responses by PPG to which plaintiff objects were served on plaintiff several months ago. Plaintiff now seeks additional information from defendant PPG to support her conspiracy claim, asserting "there exists in the control of Defendant PPG documents which support Plaintiff's allegations." (Letter brief of Plaintiff dated July 17, 1990). In opposition to PPG's motion for summary judgment, plaintiff already has submitted many documents in support of her conspiracy claim. Plaintiff does not set forth any facts supporting her assertion that PPG possesses exclusive control over documents necessary to prove her conspiracy claim in support of her motion for a continuance. When plaintiff's assertion is without factual support that relevant information is in the exclusive control of a defendant, it is within the court's sound discretion pursuant to Fed.R.Civ.P. 56(f) to deny a continuance and move to the merits of the summary judgment motion. *See United States v. Donolan*, 355 F.Supp. 220, 225 (D.Del.) *aff'd* 487 F.2d 1395 (3d Cir.1973); *Chung Wing Ping v. Kennedy*, 294 F.2d 735, 737 (D.C.Cir.), *cert. denied* 368 U.S. 938, 82 S.Ct. 380, 7 L.Ed.2d 337 (1961). The court will not grant plaintiff a continuance pursuant to Fed.R.Civ.P. 56(f) as she has already had ample opportunity to obtain the information, and she has not adequately demonstrated that there remains any relevant information in the exclusive control of PPG. The court will address the merits of the summary judgment motions at this time.

### B. *William Wade's Exposure to Defendants' Products*

Defendants move for summary judgment on the ground that plaintiff has not set forth any facts establishing that William Wade was exposed to defendants' asbestos-containing products. The Celotex defendants point to plaintiff's interrogatory answers which do not identify any particular asbestos-containing products to demon-strate "that there is no genuine issue as to any material fact" that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). It should be noted, however, that plaintiff alleges that Williams was exposed occupationally to asbestos-containing products, and plaintiff did supply defendants a list of William Wade's co-workers who could be deposed. Here it will be necessary to decide, after construing the facts in the light most favorable to the non-moving party, whether there is a genuine issue of material fact which must be left for resolution at trial. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

▆ Under New Jersey law, the burden of proof rests on plaintiff to demonstrate that his injuries were caused by defendants. *Campos v. Firestone Tire & Rubber Co.*, 98 N.J. 198, 485 A.2d 305 (1984). This rule applies to cases alleging injury resulting from exposure to asbestos-containing products. *See Sholtis v. American Cyanamid Co.*, 238 N.J.Super. 8, 28–29, 568 A.2d 1196 (App.Div.1989). In the absence of proof that Wade Williams was exposed to defendants' asbestos-containing products, summary judgment would be appropriate. *Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Here, where the defendants argue that plaintiff failed to establish that William Wade was exposed to their asbestos-containing products, plaintiff must come forward with facts demonstrating that it is a genuine issue of fact whether he was so exposed. *Id.*, 477 U.S. at 324, 106 S.Ct. at 2553.

#### 1. The Celotex Defendants

▆ Plaintiff has come forward with facts demonstrating that there is a genuine issue of material fact whether Wade Williams was exposed to the Celotex defendants' asbestos-containing products. Plaintiff met this burden by submitting the deposition testimony of Eugene Carrigan, a co-worker of Wade Williams. In his deposition testimony, Mr. Carrigan identified Armstrong Excelon Tile and Limpet Spray, Atlas Asbestos Cement, Carey pipecover-

ing, Eagle–Picher cement, Ruberoid pipe insulation, GAF Vinylflex asbestos floor tile, Johns–Manville asbestos pipe insulation and transite, Owens–Illinois and Owens–Corning Kaylo pipe insulation and United States Gypsum Audicote plaster as asbestos-containing products to which he and his coworkers, including William Wade, were exposed at New Jersey Zinc Company in the 1950's.[3] Carrigan Deposition at 70–72, 179–193; Carrigan supplemental interrogatory responses at 2 (identifying William Wade as co-worker). Such a showing by plaintiff precludes summary judgment in this matter for the Celotex defendants.

## 2. Defendant PPG

█ Like the Celotex defendants, defendant PPG argues that it is entitled to summary judgment on all claims against it as plaintiff has not demonstrated, nor can she demonstrate, William Wade's exposure to PPG's asbestos-containing products. PPG's posture in this case, however, is quite unlike that of the Celotex defendants as it has never manufactured or sold an asbestos-containing product. As discussed *supra*, the burden rests upon plaintiff to prove William Wade's exposure to PPG's asbestos-containing products. *See Campos*, 98 N.J. 198, 485 A.2d 305; *Sholtis*, 238 N.J.Super. 8, 28–29, 568 A.2d 1196. Once a defendant moves for summary judgment on the basis that there is no evidence that its product caused plaintiff's injury, the burden rests with the plaintiff to come forward with facts which demonstrate there is a triable issue. *Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. In the instant case, plaintiff has failed to come forward with any facts indicating that William Wade was ever exposed to any asbestos-containing product connected with PPG; therefore summary judgment will be entered as to the negligence, strict liability, breach of warranty, neighborhood and household exposure, and wrongful death claims.

**3.** The court cannot determine from the products identified if summary judgment is appropriate for any of the individual Celotex defendants. The Celotex defendants have briefed the causa-

Plaintiff argues her failure to set forth facts demonstrating William Wade's exposure to PPG's asbestos-containing products does not defeat her conspiracy claim against PPG; hence, plaintiff argues PPG's motion for summary judgment should be denied. Plaintiff is correct in asserting that she does not have to prove William Wade's exposure to PPG's asbestos-containing product in order to defeat PPG's motion for summary judgment on the conspiracy claim; however, plaintiff does have to set forth facts demonstrating that it is a genuine issue of fact whether PPG engaged in a conspiracy to suppress information regarding the harmful effects of asbestos. *Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

Plaintiff's complaint alleges that various defendants engaged in five separate conspiracies to suppress information regarding the harmful effects of asbestos. PPG was involved allegedly in two of the conspiracies. The first conspiracy involving PPG, which plaintiff entitles "the NIMA conspiracy," involved a Board of Directors Meeting of the National Insulation Manufacturers Association ("NIMA") on May 6, 1960. A PPG representative attended the meeting. At that meeting, "[i]t was the consensus that the establishment of a NIMA Safety Program with respect to health should be dropped." (Exhibit D to Plaintiff's Brief in Opposition to Defendant PPG's Motion for Summary Judgment ("Plaintiff's Brief") at 2). In her reply brief in response to PPG's reply brief, plaintiff argues that the safety program dropped concerned asbestos. In support of this assertion, plaintiff submits defendant Manville Fund's responses to interrogatories which indicate that NIMA had educational and informational programs to educate the insulation contractor's industry with respect to the health aspects of exposure to asbestos in 1967 and 1968. (Exhibit 1 to Plaintiff's Reply Brief in response to PPG's Reply Brief in Support of Its Motion for Summary Judgment at 84–85).

tion issue as a group, and, as a result, the court has no basis to treat any individual member of the group differently than the group as a whole.

■ While the court is obligated to view all doubt in favor of the non-moving party in a motion for summary judgment (*Meyer*, 720 F.2d at 307 n. 2), plaintiff's unsupported allegations that PPG conspired at a NIMA Board of Directors Meeting to drop the establishment of a health program *allegedly* concerning asbestos does not present a genuine issue of material fact. This court cannot assume NIMA's dropped health program concerned asbestos. Even if the court assumes it did, plaintiff has not presented any evidence that there was a conspiracy to drop the health program in which PPG participated.

■ Before the court can dismiss plaintiff's conspiracy claim against PPG, it must examine the other alleged conspiracy involving PPG to suppress the information concerning the harmful effects of asbestos. Plaintiff entitles this second conspiracy the "PPG Industries Conspiracy."

PPG is part owner of Pittsburgh Corning Corporation ("Pittsburgh Corning") which is also a defendant in this action. In 1962, Pittsburgh Corning purchased Texas Unibestos, the manufacturing plant for an asbestos pipe insulation product. *See* Plaintiff's Brief at 8–9; *see also* Exhibit G to Plaintiff's Brief at 4. PPG hired Dr. Grant as medical director of PPG in 1964. Exhibit G to Plaintiff's Brief at 49–50. Dr. Grant, in turn, contracted with Dr. Corn to conduct dust study levels at various manufacturing plants. Exhibit I to Plaintiff's Brief at 98–104. Dr. Corn was paid by PPG, but did his research concerning asbestos at Pittsburgh Corning. *Id.* at 103. On April 3, 1968, Dr. Grant informed J.W. McMillan, Works Manager at Pittburgh Corning, that there was a significant health hazard from asbestos dust inhalation in most operations in Pittsburgh Corning's plants, and recommended that various safety measures, including warning labels, be used. Exhibit F to Plaintiff's Brief at 6827, ¶ 67; Exhibit G to Plaintiff's Brief at 49–50. The crux to plaintiff's claim concerning the PPG Industries Conspiracy is the fact Pittsburgh Corning did not place warning labels on Unibestos following Dr. Grant's recommendation as Pittsburgh

Corning did not wish to jeopardize its position in a pending litigation. Exhibit F to Plaintiff's Brief at 6,827 ¶ 72.

Plaintiff's exhibits demonstrate that PPG's Dr. Grant warned Pittsburgh Corning about the dangers of asbestos exposure and recommended certain safety measures. They also demonstrate that PPG conducted research regarding asbestos at some Pittsburgh Corning facilities. None of plaintiff's exhibits, however, demonstrate any complicity of PPG in a conspiracy by asbestos manufacturers to conceal the risks of asbestos exposure. Plaintiff's claim of conspiracy by PPG is actually a recapitulation of plaintiff's allegations against a co-defendant in this action, Pittsburgh Corning, a company which produced an asbestos product. Plaintiff bears the burden of coming forward with facts which establish its conspiracy claim against PPG. *Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. As no genuine issue of material fact exists with regard to the conspiracy claim against PPG, the court will direct summary judgment for defendant PPG on all claims.

### C. *The Statute of Limitations*

■ The Celotex defendants argue that plaintiff's claims are barred by N.J.S.A. § 2A:14–2 which provides that a cause of action for personal injury by wrongful act, neglect or default of any person must be instituted within two years of the accrual of the cause of action. The two year statute of limitations of N.J.S.A. § 2A:14–2 applies to a product liability action, such as the instant case. *Burd v. New Jersey Tel. Co.*, 76 N.J. 284, 386 A.2d 1310 (1978).

■ A cause of action accrues when an injured person discovers, or should have discovered by the exercise of reasonable diligence and intelligence, that he might have a basis for an actionable claim against another person. *Lopez v. Swyer*, 62 N.J. 267, 272, 300 A.2d 563 (1973). The statute of limitations begins to run once an individual has knowledge or should have knowledge that he has sustained an injury which is or may be attributable to the fault of another. *Lynch v. Rubacky*, 85 N.J. 65, 70, 424 A.2d 1169 (1981).

The Celotex defendants argue that William Wade knew or should have known he had asbestosis in 1981, 1982, or, at the latest, 1985. If William Wade learned of his asbestosis before 1986, the claims in the instant action are barred by the statute of limitations. It is undisputed Dr. Giudice examined William Wade and wrote to Dr. Hayes in 1981, 1982, and 1985, that Wade's medical diagnosis remained unchanged, listing "asbestosis with evidence of pleural calcifications and thickening" as one of the diagnoses. (Exhibits C, D and E to the Celotex Defendants' Motion for Summary Judgment). Similarly, it is undisputed that in 1985, after examining Wade, Dr. Meoli wrote to Dr. Hayes noting that Wade's condition was consistent with "pleural asbestosis" among other conditions. (Exhibit F to the Celotex Defendants' Motion for Summary Judgment). Additionally, Dr. Meoli wrote, "I have discussed the problem with the patient in detail." The Celotex defendants assert these facts demonstrate that William Wade knew or should of known of his asbestosis before 1986.

Plaintiff, however, contends that William Wade did not know he had asbestosis until October 15, 1987, which is the date he was diagnosed by Dr. Rosner. (Plaintiffs' Answers to Interrogatories attached to Plaintiff's Brief in Opposition to the Celotex Defendants' Motion for Summary Judgment). Plaintiff particularly notes that the "problem" Dr. Meoli discussed "in detail" with Wade was the problem for which Wade visited the doctor—Wade's hernia. It is not clear that Dr. Meoli told Wade of his asbestosis, and the Celotex defendants have cited no authority indicating that Wade's doctors' knowledge of his condition must be imputed to him. This court has been unable to locate any authority supporting this proposition. Even if, as the Celotex defendants allege, Wade's doctors had a duty to disclose his condition to him which they breached, such a breach of duty would not constitute an intervening cause of Wade's asbestosis relieving defendants of their liability, if any, as tortfeasors. It therefore remains a question of fact whether Wade's doctors told him of his condition

before 1986 or whether Wade should have known of his condition prior to the 1987 diagnosis. Hence, summary judgment is inappropriate.

## III. CONCLUSION

For the foregoing reasons, the Celotex defendants' motion for summary judgment is denied. Defendant PPG's motion for summary judgment is granted on all claims.

An appropriate order will be entered.