Arnaldo **MEDINA** and Luz Lopez, his wife, Plaintiffs,

v.

**LOUISVILLE LADDER, INC.,** and Home Depot U.S.A., Inc., Defendants.

**No. 6:06–CV–612–ORL–22UAM.**

United States District Court, M.D. Florida. Orlando Division.

June 15, 2007.

John M. Tamayo, Frost Tamayo Sessums & Aranda, P.A., Bartow, FL, for Plaintiffs.

Daniel J. Gerber, Kevin Richard Gowen, II, Rumberger, Kirk & Caldwell, PA, Orlando, FL, Eugene Terk, Francis H. Brown, III, Frilot Partridge, LC, New Orleans, LA, for Defendants.

## ORDER

CONWAY, District Judge.

## I. INTRODUCTION

This is a product liability/personal injury case. Plaintiffs Arnaldo Medina and his wife, Luz Lopez, sue Defendants Louisville Ladder, Inc. and Home Depot U.S.A., Inc., for injuries Medina suffered when he fell from a wooden attic ladder and impacted his elbow. Louisville Ladder manufactured the ladder; Home Depot sold it to Medina. The Complaint asserts theories of strict product liability and negligence. Additionally, the pleading advances a loss of consortium claim on behalf of Luz Lopez.

The Defendants seek summary judgment. Additionally, they have filed a motion in limine requesting exclusion, on *Daubert*[1] grounds, of the testimony of the

---

1. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Plaintiffs' liability expert, Donald Fournier. After carefully considering the parties' submissions, and following a *Daubert* hearing, the Court concludes that both motions are due to be granted.

## II. BACKGROUND

The product involved in the accident is an 11-step, ceiling-mounted wooden attic ladder, designated as Model L224P. The ladder has a rated load capacity of 250 pounds. It consists of three separate sections that are attached with steel hinges, thereby allowing the product to fold up. Louisville Ladder manufactured the ladder in December 2004. Home Depot sold it to Medina in the Spring of 2005. The point of sale was Osceola County, Florida. The ladder carried a warning label in English and was supplied with an English-only instruction manual.

After he bought the ladder, Medina says he was going to try to install it himself, but he noticed that the installation instructions were in English. Medina has, at best, a very limited ability to read English. Medina hired a local handyman, Ismael Gonzales, to help him install the ladder. Apparently, Gonzales also cannot read English very well, or at all. In any event, neither man read the installation instructions. Medina and Gonzales improperly installed the ladder in that they failed to trim its legs as directed in the installation instructions. Consequently, the legs were not flush with the floor, and gaps existed at the ladder's joints. Prior to the accident, Medina and his sons used the ladder 25–40 times without incident. On January 2, 2006, while Medina was on the ladder, the ladder collapsed and Medina fell to the floor, injuring his elbow. Upon inspection, it was discovered that the bottom folding section of the ladder had separated from the middle section, and the rivets securing the hinges connecting the bottom and middle sections had failed.

The gravamen of the Complaint is that the ladder was defective because it lacked warnings and instructions in Spanish, and that the Defendants were negligent in failing to include warnings and instructions in that language. At the *Daubert* hearing, Plaintiffs' counsel conceded that the entire case stands or falls on the issue of whether the Defendants were legally obligated to furnish Spanish warnings and instructions.

## III. DEFENDANTS' MOTION IN LIMINE

■ Donald Fournier is a mechanical engineer.[2] Plaintiffs offer the following summary of Mr. Fournier's opinions regarding warnings and instructions:

(1) Louisville Ladder should have provided dual language instructions and warnings [for the] L224P ladder; (2) Louisville Ladder failed to provide Spanish language instructions despite the known fact that Orlando and Kissimmee have [a] large Hispanic population, many of whom do not read English; (3)[the] L224P is marketed and sold directly to [the] public, and it is foreseeable that consumers will not know to trim the legs of the ladder absent clear bilingual warnings and instructions; (4) hence, [there is a] greater duty [on] the ladder manufacturer(s) to indicate in an understandable way the importance of the critical assembly step.

Doc. 47 at 6 (alterations added). The Defendants seek exclusion of Fournier's opinions on these subjects on the asserted basis that Fournier is not qualified as a warnings expert and his views regarding bilingual instructions are unreliable. This Court agrees on both points.

---

**2.** Fournier did not testify at the *Daubert* hearing.

■ In evaluating the admissibility of expert testimony, trial courts must consider whether

(1) the expert is qualified to testify competently regarding the matters he [or she] intends to address; (2) the methodology by which the expert reaches his [or her] conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir.2005) (alterations added) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004)).

Regarding the second criterion, "[t]o assess the reliability of an expert opinion, the court considers a number of factors, including those listed by the Supreme Court in *Daubert*:

(1) whether the expert's theory can be and has been tested;

(2) whether the theory has been subjected to peer review and publication;

(3) the known or potential rate of error of the particular scientific technique; and

(4) whether the technique is generally accepted in the scientific community."

*Abreu*, 406 F.3d at 1306–07 (quoting *Frazier*, 387 F.3d at 1262). However, these listed factors "are only illustrative and may not all apply in every case." *Id.* at 1307 (citing *Frazier*). In any event, "[t]he district court has wide latitude in deciding how to determine reliability." *Id.*

Mr. Fournier is not qualified to render opinions regarding product warnings or bilingual instructions. As the Defendants note, Fournier "has no material back-

ground in warnings related to consumer products in general, or ladders in particular. The subject of warnings is not even mentioned in Mr. Fournier's resume." Doc. 37 at 15. Moreover, Fournier "has never written any articles on the subject of warnings, nor has he prepared an on-product warning or manual for any product which was sold commercially." *Id.* Further, it does not appear he has ever been court-qualified as an expert regarding the specific subject of warning adequacy. Given these circumstances, the Court determines that Fournier cannot testify regarding the adequacy of the product warnings in this case. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F.Supp.2d 852, 867 (M.D.Tenn.2005) (excluding expert's testimony based on lack of qualifications regarding warnings), *aff'd*, 484 F.3d 426 (6th Cir.2007).

Similarly, the Plaintiffs have not demonstrated that Fournier has any experience regarding the necessity for Spanish-language instructions. At his deposition, Fournier could not recall ever evaluating the issue of bilingual instructions for a consumer product prior to being retained as an expert in the present case. Accordingly, Fournier's testimony regarding bilingual warnings and instructions fails *Daubert's* qualification prong.[3]

■ For largely the same reasons, Fournier's opinions regarding bilingual warnings and instructions are unreliable. Fournier has not employed any reliable scientific- or experience-based methodology in arriving at his conclusions that Spanish-language instructions and warnings were necessary. Fournier's conclusions were developed solely for this case, have not been peer-reviewed, and are not generally accepted. As defense counsel pointed

---

**3.** Additionally, issues regarding the necessity for bilingual warnings and instructions are not a natural outgrowth of Fournier's experience.

out at the *Daubert* hearing, the generalized, largely self-study approach Fournier took in reaching his conclusions is not the sort of thing that lends itself to a finding of reliability. For these reasons, too, Fournier's opinions regarding bilingual instructions and warnings do not pass *Daubert* muster.[4]

Based on the foregoing, the Court concludes that Fournier's expert testimony is inadmissible.

## IV. DEFENDANTS' SUMMARY JUDGMENT MOTION

### A. Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds*, 30 F.3d 1347 (11th Cir.1994)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the

evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993).

### B. Analysis

■ As previously noted, Plaintiffs' entire case rests on the premise that the Defendants had a legal obligation to provide Spanish-language warnings and instructions with the subject ladder. As support for that proposition, Plaintiffs rely on the case of *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.*, 784 F.Supp. 1570 (S.D.Fla.1992).[5]

*Stanley* arose from a fire at an industrial plant, allegedly caused by the spontaneous combustion of rags soaked in linseed oil. The two employees who used the linseed oil were brothers from Nicaragua. Their primary language was Spanish. The labeling on the linseed oil can was in English. "Both employees testified that they would have sought more information on how to use the product if the label contained warnings in Spanish concerning the flammability of the product." 784 F.Supp. at 1573. Prior to the date of the fire, the defendants, acting cooperatively, regularly and actively advertised in Spanish in the Miami market. Additionally, the retailer (ironically, Home Depot) "employed a translator service to convert English instructions to Spanish for several of its product lines, including between forty and seventy products, which it marketed with bilingual instructions." *Id.*

---

4. Fournier's theory regarding the manner in which the ladder's hinge-rivets failed is also unreliable. Fournier did not do any testing or calculations to support his "low cycle fatigue" failure-mode hypothesis, he did not calculate the shear strength of the rivets, and he did not even analyze the rivets from the perspective of whether their condition was consistent with a single-overload event.

5. At the Daubert hearing, Plaintiffs' counsel stated he believed his summary judgment opposition memorandum cited a state court appellate opinion that also supported this proposition. The Court could find no such case cited in that memorandum.

The property owner sued Home Depot and the manufacturer of the linseed oil (Barr), asserting claims of negligent failure to warn, strict liability, and breach of warranty of fitness for a particular purpose. The inadequate warning theory was premised on the notion, among others, that

> the language on the backside of the product label was in English only and contained no pictographs or symbols, and therefore was inadequate to fairly, appropriately and comprehensively warn Spanish-speaking, monolingual product users of the dangers likely to be encountered with the product's use[,] especially the dangers associated with the risk of fire due to spontaneous combustion in linseed oil soaked rags.

*Id.* (alteration added). The defendants sought summary on causation grounds.

Judge Moreno of the Southern District determined as a threshold matter that issues regarding warning adequacy and proximate cause were "inextricably intertwined." *Id.* at 1574. Turning to the adequacy issue, Judge Moreno began by noting: "The issue of adequacy of a warning that does not include multilingual warnings or universally accepted pictographs or symbols, in view of defendants' active marketing of their products in the Hispanic media in the Miami market, is a question of first impression in this district." *Id.* at 1575. After observing that under Florida law warning adequacy issues "are for the jury to resolve," Judge Moreno discussed, and deemed analogous, two non-Florida warnings cases, *Hubbard–Hall Chem. Co. v. Silverman,* 340 F.2d 402 (1st Cir.1965), and *Campos v. Firestone Tire & Rubber Co.,* 98 N.J. 198, 485 A.2d 305 (1984), *superseded by statute as stated in Dewey v. R.J. Reynolds Tobacco Co.,* 121 N.J. 69, 577 A.2d 1239, 1253 (1990). Citing "the defendants' joint advertising in Miami's Hispanic media and the nature of the product," and the fact that "a large portion of the unskilled or semi-skilled Miami workforce is comprised of foreign nationals whose native tongue is not English," Judge Moreno then concluded that genuine issues of material fact existed regarding "the adequacy of the warning label, the duty to warn and proximate cause[.]" *Stanley,* 784 F.Supp. at 1575–76. On the specific subject of warning adequacy, Judge Moreno stated: "Given the advertising of defendants' product in the Hispanic media and the pervasive presence of foreign-tongued individuals in the Miami workforce, it is for the jury to decide whether a warning, to be adequate, must contain language other than English or pictorial warning symbols." *Id.* at 1576.

Respectfully, this Court disagrees with *Stanley* and declines to follow it. On the issue of whether bilingual instructions may be necessary in Florida, the decision represents isolated precedent. According to Westlaw, in the more than 15 years since *Stanley* was decided, not a single published Florida case (state or federal) has relied on the decision to conclude that bilingual warnings and instructions may be necessary under Florida law. According to the same database, no published Florida decisions (state or federal) have relied on *Hubbard–Hall* or *Campos,* the cases cited in *Stanley,* for that purpose, either.

More fundamentally, there is no indication that Florida law imposes a duty on manufacturers and sellers to provide bilingual warnings on consumer products, and this Court is unwilling to extend the concept of duty that far. Similarly, apart from *Stanley,* there is no indication that a product may be found unreasonably dangerous under Florida law merely because it lacks bilingual warnings and instructions. Again, this Court is unwilling to extend the bounds of strict product liability law and negligence that far. Further, the Court is unpersuaded that the circumstances Plaintiffs rely on to bring their

case within the ambit of *Stanley*—that Home Depot advertises in Spanish in a state having a roughly 20% Hispanic population, that its store aisle-ways have English and Spanish signs, and that Louisville Ladder provides bilingual instructions to assemblers and purchasers in other countries—mandate a different conclusion.

In sum, Plaintiffs have not presented evidence from which a reasonable jury could conclude that the subject ladder was unreasonably dangerous, or that the Defendants were negligent. Additionally, by virtue of the exclusion of Mr. Fournier's opinions, there is insufficient evidence to survive summary judgment on the issue of causation, i.e., whether the ladder failed due to improper installation.[6]

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. Defendants' Motion to Exclude the Testimony of Donald J. Fournier, Jr., P.E. (Doc. 37), filed on April 5, 2007, is GRANTED.

2. Defendants' Dispositive Motion for Summary Judgment (Doc. 34), filed on March 30, 2007, is GRANTED.

3. Defendants' Omnibus Motion In Limine (Doc. 31), filed on March 22, 2007, is MOOT.

4. The Clerk shall enter a final judgment providing that the Plaintiffs, Arnaldo Medina and Luz Lopez, shall take nothing on their claims against the Defendants, Louisville Ladder, Inc. and Home Depot U.S.A., Inc. The final judgment shall fur-

ther provide that the Defendants shall recover their costs of action.

5. Any other pending motions are moot.

6. The Clerk shall close this case.

---

6. Judges in this judicial district have held that expert testimony is necessary to prove a product defect. See *Alexander v. Danek Med., Inc.,* 37 F.Supp.2d 1346, 1349 (M.D.Fla.1999); *Principi v. Survivair, Inc.,* 231 F.R.D. 685, 687 (M.D.Fla.2005) (citing *Alexander*). Authority also exists that this requirement applies to theories based on negligence, as well as strict liability. *Blinn v. Smith & Nephew Richards,* *Inc.,* 55 F.Supp.2d 1353, 1361 (M.D.Fla.1999) (citing, inter alia, *Alexander*). If this line of authority applies to defective warning cases, this constitutes an alternate basis for summary judgment in the Defendants' favor. Since the Court has ruled that Mr. Fournier's testimony is inadmissible under *Daubert*, Plaintiffs' product defect theory is not supported by any expert testimony.